Leet et al., Appellants, *v.* City of Eastlake et al., Appellees.

[Cite as Leet v. City of Eastlake, 7 Ohio App. 2d 218.]

(No. 815—Decided September 7, 1966.)

Mr. *John S. Nelson,* for appellants.
Mr. *David P. Freed,* for appellees.

Jones, J. This is an appeal from a declaratory judgment of the Court of Common Pleas holding that Section 1340.06 of the Ordinances of the city of Eastlake (hereinafter referred to as Section 1340.06) embodies a valid exercise of the police power of the municipality, and denying a temporary injunction pending the determination of the validity of this ordinance.

At the outset, it must be stated that the pleadings show that the primary relief sought in this action was the interpretation of an ordinance, and that the temporary injunction prayed for in the trial court was only incidental to the primary relief sought. Such a judgment interpreting an ordinance or statute is not one reviewable on law and fact under the provisions of Section 2501.02, Revised Code. Therefore, this appeal must be reduced to an appeal on questions of law only. A proper bill of exceptions has already been filed in this case, and the briefs, as submitted, clearly demonstrate the legal question to be determined, *i. e.,* whether Section 1340.06 of the Ordinances

of the city of Eastlake, and sections related to it, are constitutional, as they apply to real estate brokers doing business within the municipality. On this state of the record the court *sua sponte* reduces the appeal to one on questions of law only, and will proceed to dispose of it on that basis.

Also to be noted is the fact that the court takes judicial notice of the existence and pertinent provisions of the Charter of the city of Eastlake. See *State, ex rel. Urschel,* v. *Coller,* 81 Ohio App. 163; 21 Ohio Jurisprudence 2d 53, Evidence, Section 39.

Article 1, Section 2, of the Charter of the city of Eastlake reads as follows:

"The Municipality shall have all the powers of local self-government now or hereafter granted to municipalities by the Constitution of the State of Ohio, and such further powers as are now or hereafter granted by the laws of the State of Ohio; and all such powers shall be exercised in the manner prescribed by this Charter, or, to the extent that the manner is not prescribed herein, in such manner as the Council may prescribe by ordinance. The powers of the Municipality may also be exercised, except as a contrary intent appears in this Charter or in the enactments of the Council conformably hereto, in such manner as may now or hereafter be provided by the general laws of Ohio. Enumeration of, or reference to particular powers by this Charter shall not be construed to be exclusive."

This grant of power is certainly no more restrictive than that given to Ohio municipalities by the Constitution of Ohio, and by the Revised Code.

The caption of Ordinance No. 1963-133 of the city of Eastlake, of which Section 1340.06 is a part, reads:

"An ordinance to amend Section 1340.01 thru 1340.10 and Section 1340.99 of the Codified Ordinances of the City of Eastlake, relating to signs."

And Section 1340.06 reads as follows:

"1340.06. Real Estate Brokers. A single or blanket permit shall be issued to a Real Estate Broker or Brokers for a sign or signs on properties offered for sale. Said signs shall not constitute a traffic hazard. The fee for said permit shall be $25.00. Such permit shall be for one year and may be renewed by the Building Inspector upon payment of like fee. All others offering his own property for sale or lease shall be gov-

erned by all provisions of this ordinance except no permit shall be required. All signs on premises for sale or rent, shall be removed within one month after consumation of such sale or lease."

The building inspector of the defendant city testified that the fact whether or not a fee is charged under Section 1340.06 is determined by whether or not the sign "promotes the broker in any way."

Ordinance No. 1963-133, of which Section 1340.06 is the center of controversy in this litigation, is one relating to the placement of signs. A reading of the ordinance in its entirety leads to the fair conclusion that it is an ordinance relating to the regulation of advertising by means of signs and billboards.

In *Auxter v. City of Toledo,* 173 Ohio St. 444, at 446, the Supreme Court said:

"In our opinion, any municipal ordinance, which prohibits the doing of something without a municipal license to do it, is a police regulation within the meaning of Section 3 of Article XVIII of the Ohio Constitution. * * *."

In the *Auxter case,* the Supreme Court found a municipal ordinance attempting to regulate the sale of beer and liquor in the city of Toledo invalid because the ordinance *forbids and prohibits what the statute permits and licenses.* (Emphasis ours.)

Section 1340.06 involved in the instant case is not invalid for that reason. It does not forbid and prohibit the conduct of the business of dealing in real estate within the city of Eastlake. It merely attempts to regulate certain advertising incidental to the conduct of that business as other sections of the ordinance regulate, to a degree, the advertising of any number of occupations and professions licensed, as brokers are, by the state.

Neither is Section 1340.06 invalid on the ground that it discriminates against real estate brokers as a class. Other courts have held, and this court agrees, that brokers may constitutionally be treated differently from owners of real property in regard to the placement of signs on the owner's property. See, for example, *Burk v. Municipal Court of Whittier,* 229 Cal. App. 2d 696.

However, Section 1340.06, being an ordinance enacted under the police power, must pass the test of whether it bears a

real and substantial relationship to the preservation of the public health, welfare, safety and morals, and whether it is so drawn up that it may reasonably be expected to accomplish its valid objective. These requirements were stated by the Ohio Supreme Court in paragraph three of the syllabus of *Froelich* v. *City of Cleveland*, 99 Ohio St. 376, in the following terms:

"The state and municipalities may make all reasonable, necessary and appropriate provisions to promote the health, morals, peace and welfare of the community. But neither the state nor a municipality may make any regulations which are unreasonable. The means adopted must be suitable to the end in view, must be impartial in operation and not unduly oppressive upon individuals, must have a real and substantial relation to their purpose, and must not interfere with private rights beyond the necessities of the situation."

Section 715.27, Revised Code, gives Ohio municipalities the power to regulate signs and billboards within their boundaries, and that this type of regulation is a valid exercise of the police power of municipalities is universally recognized. 62 Corpus Juris Secundum 405, Municipal Corporations, Section 221.

There remains the question of whether or not Section 1340.-06, as enacted, may reasonably be expected to accomplish its valid objective, or, to paraphrase the Supreme Court, whether the means adopted are suitable to the end in view. There can be no doubt that "the end in view" under Section 1340.06 was the regulation of brokers' advertising by means of signs within the city of Eastlake. However, Section 1340.06 attempts to exact a $25 fee from the broker *only* "for placing a sign or signs on properties offered *for sale*." (Emphasis ours.) It is silent in regard to signs erected by the broker on properties offered for lease or rent. Since violation of any section of this ordinance is a misdemeanor, under Section 1340.99 thereof (which penalty the city had power to impose pursuant to Section 715.67, Revised Code), it follows that Section 1340.06 must be strictly construed. Therefore, a broker could not be prosecuted for putting up a "for rent" or "for lease" sign, even if it bore his name, address, and/or telephone number, *i. e.*, if the sign "in any way promotes the broker." If he could not be prosecuted, it is obvious that 1340.06 is ineffective as a regulatory measure as to brokers, and is invalid as to brokers for that reason. This fact alone would justify the reversal of the judgment.

Furthermore, it is a general rule that, while a court is not justified in giving the words of a penal statute too restricted a meaning in order to be able to hold the statute invalid, nevertheless, a penal statute must be reasonably clear and precise, and a conviction under it can be upheld only if it is within both the spirit and the *letter* of the statute. See 15 Ohio Jurisprudence 2d 253 and 255, Criminal Law, Sections 20 and 21; 82 Corpus Juris Secundum 922, Statutes, Section 389, and particularly paragraphs three and four of the syllabus of *Pippinger* v. *State* (Ohio App.), 34 N. E. (2d) 63, cited therein in footnote 51 at page 928. These rules of construction apply with equal force to the construction of municipal ordinances. 39 Ohio Jurisprudence (2d) 71, Municipal Corporations, Section 328.

Section 1340.06 is *silent* in regard to the standard used in its enforcement, *i. e.*, that a broker is subject to the $25 fee if a sign "in any way promotes the broker," or under what conditions the broker becomes liable if such a sign is placed upon property by someone other than the broker. Neither does Section 1340.06 nor any related section, clearly express the *number* and *size* of such signs which a broker who has paid the fee may place *on any one location* or *premises* within any of the various zones established within the city of Eastlake. (For example, it cannot be determined from a reading of Section 1340.06, or the ordinance as a whole, by what standards a broker is governed in placing signs in residential areas.)

These reasons make Section 1340.06 too indefinite and uncertain to enforce as an ordinance, the violation of which constitutes an offense and carries a penalty.

Having taken this view, it is unnecessary for us to express any opinion on whether the $25 fee imposed by Section 1340.06 is a tax or a proper fee incidental to the enforcement of a valid regulatory ordinance.

Section 1340.06 of the Codified Ordinances of the city of Eastlake is an unconstitutional exercise of the police power of the city to the extent that the section applies to real estate brokers, and is, therefore, declared to be invalid to the extent that it applies to real estate brokers.

The judgment of the trial court is reversed.

*Judgment reversed.*

Johnson, P. J., concurs.

LYNCH, J., concurring in judgment. I concur in the judgment of this case and in the holding that Section 1340.06 is enacted under the police power and is not invalid on the ground that it discriminates against real estate brokers as a class. However, I do not agree that this ordinance is too indefinite and uncertain to enforce as an ordinance. In my opinion it is invalid because it lacks uniformity in operation and is discriminatory in two respects: (1) it requires a permit for "For Sale" signs but not "For Rent"; and (2) it requires a fee of $25 whether one "For Sale" sign is erected by a real estate broker or many such signs.

39 Ohio Jurisprudence 2d 38, Municipal Corporations, Section 306, states as follows:

"While it is permissible to make a reasonable classification, in municipal ordinances, as to the persons, things, and conditions upon or under which the provisions of the ordinance shall operate, it is required that ordinances shall be general in their operation in so far as they are intended to deal with particular subjects. * * *."

Article II, Section 26 of the Ohio Constitution provides in part as follows:

"All laws, of a general nature, shall have a uniform operation throughout the state; * * *."

Although this provision of the Ohio Constitution specifically applies to state statutes, it is submitted that the same principle is applicable to municipal ordinances.

39 Ohio Jurisprudence 2d 36-37, Municipal Corporations, Section 305, states as follows:

"In the enactment of ordinances prescribing regulations in the exercise of the police power, it is permissible to make a reasonable classification as to the persons, things, and conditions upon or under which the provisions of the ordinance shall operate. On the other hand, if the classification or exemptions contained in an ordinance are unreasonable, arbitrary, or discriminatory, the validity of the ordinance cannot be sustained. * * *."

See *Yensen* v. *State*, 9 O. D. 168.