OPINION
{¶ 1} Timothy E. Bailey appeals from a judgment of the domestic relations division of the court of common pleas overruling Bailey's objection to a magistrate's decision that denied Bailey's motion to terminate his obligation to support his disabled emancipated child.
{¶ 2} Timothy and Reilda D. Bailey nka O'Hare were divorced on August 24, 1983. Two children were born of the marriage: Wesley and Matthew. Both were then minors. Custody of both boys was awarded to Reilda.[1] Timothy was ordered to pay child support.
{¶ 3} In succeeding years both boys reached the age of majority and were emancipated by court order. However, on June 17, 1996, the domestic relations court vacated its prior emancipation order with respect to Wesley based on a physician's findings that Wesley "is totally disabled from his neurologic problems." Timothy's child support obligation for Wesley was continued pursuant to R.C. 3119.86(A)(1)(a). That section provides: "Notwithstanding section 3109.01 of the Revised Code, [t]he duty of support to a child imposed pursuant to a court child support order shall continue beyond a child's eighteenth birthday (when)[t]he child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself."
{¶ 4} Timothy's support obligation for Wesley was increased several times in subsequent years, most recently on December 19, 2003, by way of an administrative adjustment from $130 per month to $442 per month. Timothy requested a judicial review of the ordered increase. The matter was referred to a magistrate for hearings and decision.
{¶ 5} Timothy does not dispute the magistrate's following finding concerning Wesley's condition:
{¶ 6} "Wesley Bailey was injured in an accident when he was 16 years old. Due to surgery performed after the accident, a portion of Wesley's brain was removed which has created severe impairment in Wesley's day to day life. Wesley presently uses a wheelchair and requires the use of adult diapers. His mental ability is impaired, preventing him from cooking for himself or managing his own money. After ten years of work and repetition, Wesley is able to brush his teeth, shower, and change his clothes. However, Wesley has limited mobility and recent seizures have further limited his abilities. As a result of his injury, Wesley has been receiving Supplemental Security Income (SSI) benefits since the accident. The court finds that Wesley is and has been totally disabled and unable to provide for his own welfare since an accident that occurred prior to the age of majority, in accord with the implicit finding of disability that the court made in its entry and order filed June 17, 1996." (Decision, p. 2). Based on that finding, the magistrate rejected Timothy's request to modify the administrative adjustment of his support obligation. The domestic relations court adopted the decision as its preliminary order pursuant to Civ.R. 53(E)(4).
{¶ 7} Timothy filed timely objections, arguing that R.C.3119.86(A)(1)(a) denies him his constitutional right to equal protection of the law because the section and the mandate it imposes do not apply to non-divorced parents of a disabled emancipated child but only to divorced parents such as him. The court overruled the objection, holding that R.C. 3119.86(A)(1)(a) merely codifies the common law duty imposed on parents to support their emancipated children who are disabled that was announced inCastle v. Castle (1984), 15 Ohio St.3d 279, and therefore does not impose a different obligation on divorced parents such as Timothy.
{¶ 8} Timothy filed a timely notice of appeal. He presents a single assignment of error.
{¶ 9} "R.C. 3119.86(A)(1)(a), WHICH REQUIRES PAYMENT OF CHILD SUPPORT BEYOND AGE EIGHTEEN IF A CHILD OF DIVORCE IS DISABLED BEFORE THE SUPPORT ORDER IS ENTERED, IS UNCONSTITUTIONAL AS A VIOLATION OF THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THEFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND OF THE OHIO CONSTITUTION."
{¶ 10} The Fourteenth Amendment to the Constitution of the United States provides, in pertinent part: "No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
{¶ 11} R.C. 3119.86(A)(1)(a) was enacted in an exercise of the police power of the State of Ohio. A duty of support which is a product of marriage is, like marriage, a matter to be regulated by the state and does not implicate a privilege or immunity of a citizen of the United States. However, the due process and equal protection guarantees of the Fourteenth Amendment do apply to a state's exercise of its police powers, including those pertaining to marriage.
{¶ 12} Article I, Section 16 of the Ohio Constitution, the "open courts" amendment, states that every person "shall have remedy by due course of law and shall have justice administered without denial or delay." "Due course of law" means the same as "due process of law," and there is no difference respecting due process of law in the Constitution of the United States and that of Ohio. City of Akron v. Chapman (1953), 160 Ohio St. 382.
{¶ 13} There is no express provision in the Ohio Constitution which is the equivalent of the equal protection guarantee of theFourteenth Amendment. However it is fundamental that all police regulations must be reasonable, In Re Russo (1958),107 Ohio App. 238, and the state may not enact legislation which is unreasonable. Lee v. City of Eastlake (1966),7 Ohio App.2d 218. Whether or not discrimination is precluded by the requirement that police legislation be reasonable, in order to be valid police legislation may not be discriminatory. Russo.
{¶ 14} For a state's exercise of its police power to be justified and reasonable, the means adopted must be suitable to the end in view. Lee v. City of Eastlake (1966),7 Ohio App.2d 218. The General Assembly may not under the guise of its police power impose unreasonable, capricious, or arbitrary rules having no recognizable connection with the purpose of legislation it enacts. Jones v. Bentempo (1941), 137 Ohio State 634.
{¶ 15} Appellant does not argue that R.C. 3119.86(A)(1)(a) is defective because it is unreasonable in relation to the legislative purpose, or that the legislation purpose is invalid. Rather, Timothy argues that it denies him the equal protection of the law afforded to other persons similarly situated. Therefore, his challenge will be resolved on equal protection principles.
{¶ 16} The essence of the Equal Protection Clause's command that no state shall deny any person within its jurisdiction the equal protection of the laws is, essentially, that all persons similarly situated should be treated alike. Bowers v. Gilliard
(1987), 483 U.S. 587, 107 S.Ct. 3008, 97 L.Ed.2d 485. Denial of equal protection entails, at a minimum, a classification that treats similarly situated individuals unequally. Coalition ForEconomic Equality v. Wilson (1997), 110 F.3d 1431. However, treatment of dissimilarly situated persons in a dissimilar manner by the government does not necessarily violate the Equal Protection Clause. Keevan v. Smith (1996), 100 F.3d 644. Further, the Equal Protection Clause is violated only if the discrimination is purposeful. Ricketts v. City of Hartford
(1996), 74 F.3d 1397.
{¶ 17} Unless an equal protection challenge alleges actual discriminatory intent in the enactment or enforcement of a law, and in the absence of a suspect class or a burden imposed on the exercise of a fundamental right, the deferential "rational basis" test is employed to review a challenged legislative scheme. To satisfy the rational basis test "the classification must be reasonable, not arbitrary, and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." F.S. Royster Guano Co. v. Commonwealthof Virginia (1920), 253 U.S. 412, 415, 40 S.Ct. 560,64 L.Ed. 989.
{¶ 18} It is well-settled that a state may classify persons and objects for the purpose of legislation. Skinner v. State ofOklahoma ex rel. Williamson (1942), 316 U.S. 535, 62 S.Ct. 1110,86 L.Ed. 1655. However, for a classification to be invalid it must rest on material differences between persons, activities, or things included in it and those which are excluded; furthermore, it must be based on substantial distinctions. Old DearbornDistributing Co. v. Seagrams-Distillers Corp. (1936),299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. The objects and purposes of a law present the touchstone for determining proper and improper classifications, and to be valid a classification must always rest on a difference which bears a fair, substantial, natural, reasonable, and just relationship to the object for which it is proposed. Braxtrom v. Herold (1966), 387 U.S. 107,86 S.Ct. 760, 15 L.Ed.2d 620.
{¶ 19} Because the right to marry is a fundamental right, any statute affecting such a right is subject to strict judicial scrutiny and must be supported by a compelling state interest. In contrast, classifications based on marital status are ordinarily not suspect for equal protection purposes. Rendo v. McLean
(Md., 1997), 697 A.2d 468. Thus, laws allowing a surviving spouse to take against a will, In re Estate of Long (Pa., 1992),600 A.2d 619, or treating married and unmarried persons differently under the Social Security Act, Matthews v. DeCastro (1976),429 U.S. 181, 97 S.Ct. 481, 50 L.Ed.2d 3890, present no equal protection violation, if only because they are rationally related to a legitimate governmental purpose.
{¶ 20} In general, equal protection of the laws is not denied by a course of procedure which is applied to legal proceedings in which a particular person is affected, if such a course would also be applied to any other person in the state under similar circumstances and conditions. Salas v. Clements (Mich., 1975),226 N.W.2d 101. The legislature may classify litigation and adopt one type of procedure for one class and a different one for another, so long as the classification meets the test of reasonableness. Dohang v. Rogers (1930), 281 U.S. 362,50 S.Ct. 299, 74 L.Ed. 904.
{¶ 21} Appellant is correct that R.C. 3119.86(A)(1)(a) creates a classification for divorced parents of an adult child who is disabled separate from the class into which non-divorced parents are put. Both classes have a common-law duty to support their emancipated disabled children. Castle v. Castle. However, unlike the class of non-divorced parents, who perforce are not subject to a prior child support order, divorced parents are subject to a mandatory extension of a prior support order past the child's majority age. R.C. 3119.86(A)(1)(a) thus imposes an actual and specific burden on divorced parents while non-divorced parents have an obligation which is inchoate only, at least unless and until support is sought.
{¶ 22} The trial court correctly pointed out that R.C.3119.86(A)(1)(a) did no more than codify the common law rule ofCastle as it applies to divorced parents. However, while that fact creates a presumption that the General Assembly's purpose in enacting R.C. 3119.86(A)(1)(a) was to accomplish legislatively the policies that Castle identified, it does not resolve the Equal Protection Clause challenge.
{¶ 23} Persons who are members of the class of divorced persons that R.C. 3119.86(A)(1)(a) creates do not constitute a suspect class, and no contention is made that purposeful or intentional discrimination motivated its adoption by the General Assembly. Therefore, the equal protection challenge must be resolved on the rational basis standard: (1) whether the classification is reasonably related to what it seeks to accomplish, Brown v.Campbell County Board of Educ. (1955), 915 S.W. 407, and (2) whether the classification rests on material differences between the classes concerned. Old Dearborn Distributing Co. v.Seagram-Distillers, Corp.
{¶ 24} With respect to the first prong identified, it would be speculative to find that divorced parents are less likely than are non-divorced parents to support their disabled adult children voluntarily. The distinction lies in the fact that, unlike non-divorced parents, divorced parents have been subject to a child support order founded on a duty of support which, per R.C.3103.03(B), "continue(s) beyond the age of majority as long as
the child continuously attends on a full-time basis any recognized and accredited high school." (Emphasis supplied). The negative implication of that provision is that the parental duty ends at the age of majority, which per R.C. 3109.01 is eighteen, subject to the high school extension. R.C. 3119.86(A)(1)(a) functions to overcome or rebut that implication, preserving the duty of support announced in Castle when a decree of divorce has been entered. In view of the often contentious nature of divorce relationships, the distinction the section makes between divorced and non-divorced parents is in its application reasonably related to what it seeks to accomplish; avoiding claims that, pursuant to R.C. 3103.03(B), a divorced parent of a disabled adult child is exempt from the requirements of the common law duty imposed on all parents of emancipated disabled children announced in Castle.
{¶ 25} We find that R.C. 3119.86(A)(1)(a) is reasonable, not arbitrary, and that it rests on a ground of difference between married and divorced parents of disabled adult children which has a fair and substantial relation to the object of the legislation, which is that all persons who are parents of disabled adult children are treated alike, whether pursuant to R.C.3119.86(A)(1)(a) or by the common law duty announced in Castle,
with respect to their obligations of support. F.S. Royster GuanoCo. Therefore, the rational basis test is satisfied and the Equal Protection Clause is not offended.
{¶ 26} The assignment of error is overruled. The judgment of the domestic relations court will be affirmed.
Brogan, P.J. and Wolff, J., concur.
[1] For clarity and convenience, the parties are identified by their first names.