OPINION
{¶ 1} Plaintiff-appellant, Robin Cryder, appeals from a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the motion of defendant-appellee, Kathleen Cryder, to modify spousal support. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant and appellee were married on September 1, 1985, and have one child born as issue of the marriage, who was born April 8, 1986. Appellant filed for divorce in October 1999. In the divorce proceedings, the parties agreed to all issues except for the issue of spousal support, which was tried before the court. On March 18, 2003, the trial court filed a decision that resolved the issue of spousal support. The trial *Page 2 
court found an award of spousal support to be reasonable and appropriate, and ordered appellant to pay $1,500 per month in spousal support, plus a processing charge. The parties were divorced pursuant to a "Judgment Entry — Decree of Divorce" filed June 19, 2003. On April 13, 2005, appellee filed a motion to modify spousal support. On October 25, 2005, appellee filed a motion to compel discovery, in which she requested that the court order appellant to comply with her discovery requests and award her reasonable costs and attorney fees which she incurred in order to bring the discovery issue to the court's attention. On November 15, 2005, appellee filed a motion for attorney fees pursuant to R.C. 3105.73. The magistrate of the trial court held a hearing on these motions on November 14 and 15, and December 5 and 6, 2005, and issued a decision on August 23, 2006. The trial court adopted the decision on the same date.
 {¶ 3} On August 30, 2006, appellee filed a request for findings of fact and conclusions of law. A magistrate's decision, with findings of fact and conclusions of law, was filed on February 1, 2007, and the trial court adopted the magistrate's decision in an amended judgment entry on the same day. Regarding appellee's motion to modify spousal support, the magistrate determined that no substantial change in circumstances existed, and that the current amount of spousal support was still appropriate and reasonable. Regarding appellee's motion to compel discovery, the magistrate found that appellant did not fully comply with appellee's discovery requests. The magistrate found that appellee incurred $750 in attorney fees in connection with her motion to compel discovery. As to appellee's motion for attorney fees pursuant to R.C. 3105.73, the magistrate found that it would be inequitable to award attorney fees to appellee because *Page 3 
the motion for attorney fees was not timely filed and because appellee did not prevail on her motion to modify spousal support.
 {¶ 4} On February 13, 2007, appellee filed objections to the magistrate's February 1, 2007 decision. Specifically, by her objections, appellee argued that: (1) the magistrate incorrectly interpreted the divorce decree to require appellee to prove that there had been a substantial change in circumstances of either party in order to prevail upon a motion to modify spousal support; (2) the magistrate incorrectly calculated appellant's income at the time of the hearing on the motion to modify spousal support; (3) the magistrate incorrectly calculated appellee's income at the time of the hearing on the motion to modify spousal support; (4) the magistrate incorrectly found that appellee's monthly living expenses were excessive and incorrectly excluded the expenses which appellee incurs for the upkeep of a condominium in Florida; and (5) the magistrate incorrectly denied appellee's request for attorney fees on the basis that appellant did not receive timely notice of appellee's intent to seek attorney fees.
 {¶ 5} On June 13, 2007, the trial court issued a decision and judgment entry that addressed appellee's objections to the magistrate's decision.[1] The trial court sustained, in their entirety, appellee's first, second, third, and fifth objections to the magistrate's decision. In addition, the court sustained in part, and denied in part, appellee's fourth objection. Upon resolving appellee's objections to the magistrate's decision, the trial court engaged in a detailed analysis regarding whether the amount of spousal support should be modified, including an analysis of the factors in R.C. 3105.18(C)(1). *Page 4 
 {¶ 6} By its decision filed June 13, 2007, the trial court adopted the magistrate's decision as it related to appellee's motion to compel discovery, and vacated the decision as it related to appellee's motions to modify spousal support and for attorney fees pursuant to R.C.3105.73. The trial court found that spousal support is still necessary and appropriate. Additionally, the court found that an award of $2,250 per month of spousal support is reasonable, appropriate, and equitable. Accordingly, the trial court ordered appellant to pay spousal support of $2,250 per month, plus a two percent processing charge, for a total of $2,295 per month, effective April 13, 2005. The trial court ordered the Franklin County Support Enforcement Agency ("FCSEA") to determine the support arrearage in this matter, and ordered appellant to liquidate the arrearage in monthly installments of $400 per month, plus a two percent processing charge, for a total of $408 per month, until the arrearage is paid in full. The trial court awarded $3,500 in attorney's fees to appellee pursuant to R.C. 3105.73. "In addition to the other orders issued" in its decision, the trial court ordered appellant to pay attorney's fees to appellee in the amount of $750, in accordance with the magistrate's decision regarding appellee's motion to compel discovery. (See June 13, 2007 Decision, at 41.)
 {¶ 7} Appellant appeals and sets forth the following five assignments of error for our review:
 1. The lower court erred in calculation of Mr. Cryder's 2005 income.
 2. The Court of Domestic Relations abused its discretion by assuming that Plaintiff's income should increase.
 3. The Court of Domestic Relations abused its discretion for not penalizing Defendant-Appellee for deferring her Vanguard payments. *Page 5 
 4. The Court of Domestic Relations erred by not taking into consideration the financial support given to his son before he was emancipated.
 5. Given the facts of this case, the lower court abused its discretion by awarding Attorney's fees to Defendant-Appellee.
 {¶ 8} Appellant's first four assignments of error concern the trial court's decision to grant appellee's motion to modify spousal support. A trial court is generally afforded wide latitude in deciding spousal support issues. Grosz v. Grosz, Franklin App. No. 04AP-716,2005-Ohio-985, ¶ 8, citing both Bolinger v. Bolinger (1990),49 Ohio St.3d 120, and Cherry v. Cherry (1981), 66 Ohio St.2d 348. An appellate court reviews the modification of spousal support under an abuse of discretion standard. Grosz, at ¶ 9, citing Booth v. Booth (1989),44 Ohio St.3d 142, 144. An abuse of discretion connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable decision. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Thus, absent an abuse of discretion, the trial court's judgment will be affirmed. Grosz, at ¶ 9, citing Masters v. Masters
(1994), 69 Ohio St.3d 83.
 {¶ 9} In resolving appellee's motion to modify spousal support, the trial court engaged in a detailed analysis of the factors set forth in R.C. 3105.18(C)(1), which provides as follows:
 In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, *Page 6 
disbursed, or distributed under section 3105.171
of the Revised Code;
 (b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
 (d) The retirement benefits of the parties;
 (e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable. *Page 7 
 {¶ 10} Appellant's first assignment of error alleges that the trial court erred in calculating his 2005 income for purposes of R.C.3105.18(C)(1)(a). Appellant argues that because of this erroneous calculation, the trial court improperly raised his spousal support obligation to $2,250 per month, plus a two percent processing charge, for a total of $2,295 per month, effective April 13, 2005. Appellant argues that the trial court, by adding $15,000, plus the amount of expenses, to appellant's income for 2005, adopted appellee's view that $15,000 of income from 2004 should be added to appellant's 2005 income. Additionally, appellant argues that the trial court erred in including income from his "John Stuart Mill account" for purposes of calculating his 2005 income. According to appellant, the John Stuart Mill account does not provide steady income for him and, therefore, it was error for the trial court to add income from this account to his 2005 earnings. These arguments are unpersuasive.
 {¶ 11} Appellee argued, in her second objection to the magistrate's decision, that the magistrate had incorrectly calculated appellant's 2005 income as totaling $92,113.70, and appellee set forth her own calculation as to appellant's income for 2005. Appellee asserted that appellant received $15,000 in connection with work completed for Hugo Beck in November and December 2004, but, according to his testimony, he did not have use of these funds until 2005. Thus, according to appellee's objection to the magistrate's decision, the $15,000 should be included in appellant's 2005 income. Appellee resolved that appellant's income for 2005 was either $126,618, or $141,618, depending on when the $15,000 is included in appellant's income.
 {¶ 12} The trial court sustained appellee's second objection because it found that the magistrate incorrectly calculated appellant's income at the time of the hearing, but it *Page 8 
did not include the $15,000 in appellant's income for 2005. In its decision, the trial court calculated appellant's 2005 income as follows:
2005: January-August monthly income:

$5,500.00 fixed rate
$2,300.00 variable rate
$833.00 Social Security taxes and contribution to
 health insurance
$134.00 rental income
$500.00 automobile allowance
$163.00 Vanguard (Georgia Pacific retirement)

September-December monthly income:
$5,500.00 fixed rate
$833.00 Social Security taxes and contribution to
 health insurance
$134.00 rental income
$500.00 automobile allowance
$163.00 Vanguard (Georgia Pacific retirement)

Huntington National Bank Interest: $16.00 for the year
Interest in strip mall: $3,727.50 for the year
Carriage Court: $2,625.00 for the year
Interest Income: $1,000.00
TOTAL: $111,328.50

(Footnotes omitted.)
 {¶ 13} Even though there is no indication that the trial court included the $15,000, plus expenses, appellant received in connection with work completed for Hugo Beck in November and December 2004, into its calculation of appellant's income for 2005, we note that the trial court did specifically refer to that income in its analysis of the earning abilities of the parties. In discussing the earning ability of appellant, the trial court detailed appellant's recent income history. Within that discussion, the trial court noted that appellant received income of $15,000, plus expenses, for part of November and all of December of 2004, for a total of approximately $18,000. *Page 9 
 {¶ 14} Thus, while the trial court considered the $15,000, plus expenses, of income that appellant received for his work in part of November and all of December 2004, it did not include that income in its calculation of appellant's 2005 income. Consequently, we find as unpersuasive appellant's argument that the trial court erroneously included income from 2004 in its calculation of his income for 2005.
 {¶ 15} We also reject appellant's argument that the John Stuart Mill account distribution for 2005, which the trial court identified as income from appellant's "interest in strip mall," should not have been considered income for 2005 because the distributions he receives are inconsistent. Appellant testified at the hearing that he received $3,727.50 in 2005 as a distribution based on his interest in a limited partnership identified as "John Stuart Mill," which apparently has an interest in a strip mall. Appellant further testified that the distribution he receives based on his interest in the limited partnership varies from year to year. The fact that appellant's distribution from the John Stuart Mill limited partnership may vary from year to year did not preclude the trial court from including, in the computation of appellant's 2005 income, the income appellant received in 2005 based on his interest in the limited partnership.
 {¶ 16} Accordingly, we overrule appellant's first assignment of error.
 {¶ 17} By his second assignment of error, appellant argues that the trial court abused its discretion by assuming that his income should increase. According to appellant, the trial court "just simply declares that Plaintiff-Appellant's income should increase." (Appellant's brief, at 7.) Appellant contends that the trial court's observation is not based on any evidence in the record. Appellant's argument is unconvincing. *Page 10 
 {¶ 18} At the time of the hearing, appellant was working as an independent contractor for Hugo Beck in the United States and Canada and received a salary plus commission from Hugo Beck. In 2005, appellant's income from Hugo Beck had three components: a fixed rate (approximately $5,500 per month), a variable rate (approximately $2,300 per month when received), and Social Security taxes and contribution to health insurance (approximately $833 per month). Appellant did not receive the variable income from September to December 2005.
 {¶ 19} In its decision, the trial court observed that appellant's income for 2005 was less than it could have been because appellant failed to meet his minimum sales goal. The court also observed that appellant's failure to meet his minimum sales goal in 2005 was due in part to him not working because of his heart surgery, which the court viewed as an isolated event. On that basis, the trial court resolved that appellant's income should increase. Appellant contends that this reasoning assumes that he would return to "pre-heart surgery capacity." (Appellant's brief, at 7.) However, there was no evidence presented that the problem appellant experienced in 2005 would be reoccurring, or that he is physically unable to work as before. Based on the foregoing, we conclude that it was not unreasonable for the trial court to find that appellant's income should increase.
 {¶ 20} Accordingly, we overrule appellant's second assignment of error.
 {¶ 21} Appellant's third assignment of error alleges that the trial court abused its discretion by not incorporating income from a retirement account into appellee's current income. Essentially, appellant argues that appellee's decision to defer payment of retirement benefits was not properly considered by the trial court. *Page 11 
 {¶ 22} At the time of hearing before the magistrate, appellant was receiving approximately $163 per month in retirement income based on his portion of his Georgia Pacific retirement benefits. Pursuant to the divorce decree, appellee is entitled to half of appellant's Georgia Pacific retirement benefits. Appellee voluntarily deferred payment of her portion of the benefits. Appellee testified that, when the interest in the retirement account was divided, it was her decision to defer payments from that account until she retired. At the time of the hearing, she was doing paralegal work at Huntington National Bank.
 {¶ 23} R.C. 3105.18(C)(1)(d) requires the trial court, when determining the appropriate amount of spousal support to award, to consider the retirement benefits of the parties. A review of the trial court's decision reveals that the trial court duly considered the retirement benefits of the parties. In its analysis of the factors set forth in R.C. 3105.18(C)(1), the trial court repeatedly noted that appellee is entitled to a portion of appellant's retirement benefits with Georgia Pacific, and that she chose to defer said payments. Specifically, the trial court considered this circumstance in the context of analyzing the income of the parties, the relative earning abilities of the parties, the retirement benefits of the parties, and the relative assets of the parties. Within the context of analyzing R.C.3105.18(C)(1)(d), the trial court noted that appellee "should not be penalized for deferring these payments." (June 13, 2007 Decision, at 28.) Thus, a review of the trial court's decision reveals that the trial court did not ignore the current availability of the retirement benefits and recognized that appellee decided to defer the payments until a later time. Moreover, the trial court's observation that appellee should not be *Page 12 
"penalized" for deferring these payments is reasonable considering the prudence of deferring funds until retirement.
 {¶ 24} Based on the foregoing, we overrule appellant's third assignment of error.
 {¶ 25} In his fourth assignment of error, appellant contends that the trial court erred by not considering the financial support he provided to his son prior to his son's emancipation. More specifically, appellant argues that the trial court did not "give [him] credit" for the financial support he gave his son to pay for his son's senior year in high school at a private institution. (See appellant's brief, at 9.) Appellant's brief states that he established a fund in the amount of $30,000 to pay for his son's high school education at the Columbus Academy. Appellant claims that appellee absconded with all but $18,000 of the education fund.
 {¶ 26} R.C. 3105.18(C)(1)(i) requires the trial court to consider the relative assets and liabilities of the parties. The trial court, in discussing the parties' assets and liabilities, noted that, from November 2004 until May 5, 2005, appellant paid $2,860 per month for his son's senior year in high school. While recognizing this as an expense that appellant previously had, the trial court noted that appellant no longer has this expense. Generally, a parent's duty of support to a child ends when the child reaches the age of majority, which, for a child who is not legally disabled, is 18 years. See R.C. 3103.03 and3109.01. Under the "high school exception," the parental duty of support continues beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school. See R.C. 3103.03; Bailey v. O'Hare, Montgomery App. No. 20622,2006-Ohio-239, ¶ 24. Here, when the matter was heard by the magistrate, the parties' child had reached the age of 18 and had graduated from high school. Thus, the *Page 13 
trial court correctly noted, in the context of evaluating appellant's assets and liabilities, that appellant no longer had a duty to support his son.
 {¶ 27} Appellant's suggestion that the trial court failed to consider the status of the education fund is also unpersuasive. A review of the record reveals that the parties, pursuant to an August 1, 2001 entry allocating parental rights and responsibilities as to the son, agreed to establish an education fund for their son in the amount of $62,500. The fund was established to finance the son's education at Columbus Academy, or an alternative school. Appellee testified that approximately $17,000 remained in the education fund after her son graduated from high school, and that she viewed the remaining money as being her son's money. Moreover, pursuant to an agreed entry filed April 15, 2005, appellee was given the remaining money in the education fund free and clear of any claim by appellant. The trial court, in its discussion regarding the parties' assets and liabilities, noted that appellee had $17,000 remaining in the fund for her son's education, and that she planned to give the money to her son. Thus, we find that the trial court gave due consideration to the status of the remaining money in the son's education fund.
 {¶ 28} Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 29} By his fifth assignment of error, appellant argues that the trial court abused its discretion by awarding attorney's fees to appellee. Specifically, appellant argues that the trial court abused its discretion in ordering him to pay attorney's fees in the amount of $3,500. Appellant does not directly challenge the trial court's additional award of $750 in attorney's fees to appellee. *Page 14 
 {¶ 30} In this matter, appellee requested attorney's fees pursuant to Civ.R. 37(A)(4) and R.C. 3105.73. In her motion to compel discovery, filed October 25, 2005, appellee requested that the court order appellant to comply with her discovery requests, and she also requested, pursuant to Civ.R. 37(A)(4), that the court award her reasonable costs and attorney fees which she incurred in order to bring the discovery issue to the court's attention. On November 15, 2005, appellee requested attorney's fees pursuant to R.C. 3105.73.
 {¶ 31} Civ.R. 37 governs situations in which a trial court may sanction parties for failure to cooperate in general discovery.Stratman v. Sutantio, Franklin App. No. 05AP-1260, 2006-Ohio-4712, ¶ 29. Under Civ.R. 37(A), a party may move the court to compel an uncooperative litigant to participate in discovery. If the motion is granted, the court is generally required to award reasonable expenses incurred, including attorney fees, to the prevailing party. See Civ.R. 37(A)(4). The magistrate in this case sustained in part appellee's motion to compel discovery and awarded attorney's fees to appellee in the amount of $750. Civ.R. 53(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."
 {¶ 32} In this appeal, appellant does not allege plain error as to the trial court's award of $750 in attorney's fees. Appellant did not object to the magistrate's resolution of appellee's motion to compel discovery, and the trial court adopted the magistrate's decision as it related to that motion. As to appellee's request for attorney's fees pursuant to R.C. 3105.73, the magistrate denied that request, but, after appellee objected to the *Page 15 
magistrate's conclusion on that issue, the trial court awarded $3,500 in attorney's fees to appellee. In this appeal, appellant challenges the trial court's decision to award $3,500 in attorney's fees to appellee pursuant to R.C. 3105.73. Therefore, the issue before this court is whether the trial court erred in awarding attorney's fees pursuant to R.C. 3105.73.
 {¶ 33} R.C. 3105.73(B) provides that, in any post-decree motion or proceeding arising out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." Furthermore, "[i]n determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B). Therefore, while an award of attorney's fees under Civ.R. 37(A)(4) serves as a sanction for failure to cooperate in discovery matters, an award of attorney's fees under R.C. 3105.73 focuses on whether an award of attorney's fees is equitable.
 {¶ 34} A trial court's decision whether to award attorney's fees is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. See, e.g., Georgenson v.Georgenson, Franklin App. No. 03AP-390, 2003-Ohio-7163. Thus, a party is not entitled to attorney's fees; rather, the trial court decides on a case-by-case basis whether attorney's fees would be equitable. Hamad v.Hamad, Franklin App. No. 06AP-516, 2007-Ohio-2239, at ¶ 71, citingOckunzzi v. Ockunzzi, Cuyahoga App. No. 86785, 2006-Ohio-5741.
 {¶ 35} In challenging the trial court's award of attorney's fees in the amount of $3,500, appellant argues that: (1) he provided all requested documents in his possession, *Page 16 
custody, and control; (2) appellee's request was unduly burdensome under the circumstances of this case; (3) appellee did not precisely specify what documents appellant failed to provide; and (4) appellant's health was a factor in his inability to swiftly respond to appellee's discovery request.
 {¶ 36} In analyzing appellee's motion for attorney's fees pursuant to R.C. 3105.73, the trial court considered various factors concerning the equitableness of awarding attorney's fees, including appellant's failure to respond to appellee's discovery requests. The trial court noted that appellee was forced to issue numerous subpoenas due to appellant's failure to respond to appellee's discovery requests. This circumstance was also considered in connection with the resolution of the motion to compel discovery. In addressing appellee's motion to compel discovery, the magistrate discussed how appellee had to have subpoenas issued in order to obtain records at specified banks because appellant did not provide those records. The trial court adopted the magistrate's decision as it related to appellee's motion to compel discovery. Therefore, the analysis regarding the awarding of attorney's fees pursuant to R.C.3105.73 overlapped the magistrate's analysis regarding appellee's motion to compel discovery insofar as it was determined that appellee was forced to subpoena bank records because appellant failed to fully respond to appellee's discovery requests concerning those records.
 {¶ 37} The record supports the trial court's finding that appellant did not comply with the Ohio Rules of Civil Procedure because appellant did not provide the bank records as requested by appellee. Moreover, although a party may not make excessively burdensome or oppressive discovery demands,[2] such was not the case here. The trial *Page 17 
court reasonably resolved that, even though the requested bank records were not in appellant's possession, he was obligated to acquire copies of requested records that would be readily obtainable via internet access or a simple written request. Furthermore, it was within the trial court's discretion not to find appellant's explanation, for why there was not full compliance with appellee's discovery request, to be compelling. Ultimately, it was within the trial court's discretion to find fault in appellant's conduct, relating to discovery matters, for purposes of determining the equitableness of awarding attorney's fees pursuant to R.C. 3105.73.
 {¶ 38} Although appellant's conduct was one factor that the trial court considered in determining the equitableness of an award of attorney's fees under R.C. 3105.73, it also considered other factors pertinent to this analysis. Specifically, the trial court assessed the legal expenses of the parties since appellee filed her motion to modify spousal support on April 13, 2005. The trial court noted that appellee pays her attorney $250 per hour, her attorney's associate $135 per hour, and her attorney's legal assistant $80 per hour. The court further noted that, as of November 15, 2005, appellee incurred $11,626.47 in attorney's fees since the motion to modify was filed, and, as of December 5, 2005, appellant had incurred approximately $5,800 in attorney's fees since the motion to modify was filed. Based on the trial court's knowledge and experience regarding domestic relations matters in Franklin County, and knowledge concerning both appellant's and appellee's attorney's reputations and experience, the court found both parties' attorney's fees necessary and reasonable. The trial court found that the motion to modify spousal support was contemplated by the prior orders of the trial court, and, therefore, it was reasonable and appropriate for appellee to file her motion under the facts *Page 18 
of this case. The trial court further noted that appellant's income is significantly higher than appellee's income.
 {¶ 39} Under the circumstances of this case, we find that the trial court did not abuse its discretion in awarding attorney's fees to appellee in the amount of $3,500 pursuant to R.C. 3105.73, in addition to the $750 in attorney's fees awarded to appellee in connection with appellee's motion to compel discovery. Consequently, we overrule appellant's fifth assignment of error.
 {¶ 40} Having overruled all five of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
McGRATH, P.J., and BRYANT, J., concur.
[1] In its decision, the trial court identified each specific contention appellee set forth regarding the magistrate's decision as an "assignment of error." In this appeal, we identify each contention as an "objection." See Civ.R. 53(D)(3).
[2] See Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc. (1999),134 Ohio App.3d 673; Civ.R. 26(C). *Page 1