[Cite as *Darr v. Livingston*, 2017-Ohio-841.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kelly Darr, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-315 |
| v. | : | (C.P.C. No. 08DR06-2576) |
| Seth Livingston, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 9, 2017

**On brief:** *Sowald Sowald Anderson Hawley & Johnson*, and *Marty Anderson*, for appellee. **Argued:** *Marty Anderson.*

**On brief:** *Williams & Schoenberger*, and *Laura M. Peterman*, for appellant. **Argued:** *Laura M. Peterman.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations.

KLATT, J.

{¶ 1} Defendant-appellant, Seth Livingston, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that found him in contempt and ordered him to pay $6,500 in attorney fees and costs to plaintiff-appellee, Kelly Darr. For the following reasons, we dismiss the assignments of error challenging the finding of contempt, as subsequent events have rendered those assignments of error moot. We affirm the trial court's award of attorney fees and costs.

{¶ 2}   The parties married in 1999, and during the marriage, they had one child. On June 27, 2008, Darr filed for divorce.  In the agreed judgment entry/decree of divorce, entered April 2, 2009, the trial court stated:

> The Parties own real estate located at 191 West Lincoln Avenue, Delaware, Ohio, 43015.   Said property shall immediately be placed for sale.  During the pendency of the sale, Defendant shall have exclusive use of said property and Defendant shall be solely liable for all real estate related expenses, including mortgage and taxes, and shall hold Plaintiff harmless on the same until said real estate is sold. Upon sale of said property, all proceeds shall be applied in the following manner:
>
> 1.      Mortgage and sales costs;
>
> 2.      All credit card debt for both parties, including USAA Mastercard ($9,579), Menards ($1,304), Bank of America Amex ($16,635), Citibank Mastercard ($3,034), and Chase Visa/Mastercard ($6,957).
>
> 3.      Balance of note on Defendant's 2003 Dodge Ram ($6,878)[.]
>
> 4.      The parties shall equally divide all amounts owed to repair and renovate the marital real estate which are due and owing as of October 29, 2008, upon proof of expense (verification of receipts).   Estimate as of October 29, 2008, $16,000-$18,000.
>
> 5.      Remainder of proceeds shall be divided evenly (50/50) between the parties.
>
> The Plaintiff shall fully cooperate with the Defendant with respect to the listing and sale of the real property and shall execute any and all documents necessary to effect the sale of the real estate.  The Plaintiff and Defendant shall agree upon the listing agent, listing price and terms of sale and shall follow the recommendations of their realtor regarding same.

(Apr. 2, 2009 Agreed Jgmt. Entry/Decree of Divorce at 2-3.)

{¶ 3}   Livingston initially listed the West Lincoln Avenue house for sale in October 2008.  The house remained on the market until October 2009.  During that period, no

one made an offer on the house, even though Livingston reduced the offering price several times.

{¶ 4}   Livingston withdrew the West Lincoln Avenue house from the market because he planned to file for bankruptcy.  On October 5, 2009, Livingston filed a petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. 1301 et seq.  Livingston successfully completed his repayment plan.  On February 10, 2015, the bankruptcy court issued Livingston a discharge of all debts included in the plan.

{¶ 5}   After his bankruptcy discharge, Livingston asked two realtors to evaluate the West Lincoln Avenue house.  Both realtors recommended making improvements to the house, including replacing carpet, refinishing the hardwood floors, and repairing the front porch.  With these improvements, the recommended listing price was $229,000.  Without the improvements, the recommended listing price was $205,000 to $210,000.

{¶ 6}   At this point, Livingston contacted Darr and set forth two options.  As Livingston later testified:

> I had asked Kelly repeatedly what her object was on the house.  Did she want to be off the mortgage or did she want to try to participate in the financial payout on the house.
>
>  * * * If she just wanted to be off the house, I was willing, and I had offered, to try to refinance the house * * * and get her name off [the mortgage].
>
> Then I would take care of the repairs that needed to be done at my expense and on my timeline and that I would then sell the house and I would have the proceeds.  Or if she wanted to participate in the proceeds of the sale, then I thought that it only fair that she participate in the repairs that needed to be done.  And then we could talk about how we would split up the proceeds.

(Tr. at 26-27.)  Thus, Livingston gave Darr a choice:  either he would attempt to remove her from the mortgage, in which case Darr would receive no proceeds from the sale of the house, or Darr would have to contribute to the costs of improving the house, in which case she could receive some of the proceeds from the sale.

{¶ 7}   If Darr chose the latter option, Livingston did not intend to split the proceeds from the sale equally between them.  Rather, Livingston claimed a preemptory entitlement to $27,000, which was the approximate amount his mortgage payments

reduced the loan principal from the date on which Darr moved out of the house (in August 2007) until the date of the contempt hearing (in August 2015). If any proceeds remained after he collected that $27,000 from the sale proceeds, Livingston was willing to allocate half of those proceeds to Darr.

{¶ 8} According to Livingston, Darr refused to respond to his ultimatum. Livingston, in turn, refused to list the house for sale until Darr responded. This impasse benefited Livingston because he occupied the house, and he preferred to defer listing the house for sale until March 2016.

{¶ 9} On May 18, 2015, Darr moved for an order finding Livingston in contempt for failing to comply with the terms of the divorce decree regarding the West Lincoln Avenue house. That motion, as well as Darr's motion for attorney fees, came before the magistrate for a hearing. After considering all the evidence introduced at the hearing, the magistrate issued a decision denying Darr's contempt motion, granting Darr's motion for attorney fees, and awarding Darr $2,000 in fees. Both parties objected to that decision.

{¶ 10} In a judgment issued March 30, 2016, the trial court ruled on the parties' objections. In relevant part, the trial court found Livingston in contempt for failing to list the West Lincoln Avenue house for sale. The trial court sentenced Livingston to 30 days in jail unless Livingston purged his contempt by: (1) listing the house for sale on or before April 30, 2016 and continuously maintaining the listing, (2) reducing the list price of the house by five percent every 30 days until the house was sold, and (3) maintaining the house in a clean, showable condition at all times. In addition to finding Livingston in contempt, the trial court also ordered Livingston to pay Darr $6,500 for her attorney fees and litigation costs.

{¶ 11} Livingston now appeals the trial court's March 30, 2016 judgment, and he assigns the following errors:

> [1.] THE TRIAL COURT ERRED BY FINDING THE APPELLANT IN CONTEMPT.
>
> [2.] THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [3.] THE TRIAL COURT'S DECISION CREATED AN INEQUITABLE FINANCIAL WINDFALL TO THE APPELLEE.

[4.]    THE TRIAL COURT'S AWARD OF ATTORNEY'S FEES TO THE APPELLE[E] WAS AN ABUSE OF DISCRETION.

{¶ 12} By his first two assignments of error, Livingston challenges the trial court's ruling finding him in contempt for failing to comply with the terms of the divorce decree. We find that the sale of the West Lincoln Avenue house in November 2016 renders these two assignments of error moot.

{¶ 13} An issue becomes moot when it presents only a hypothetical or academic question, and a judicial resolution of the issue would have no practical significance. *State ex rel. Ford v. Ruehlman*, __ Ohio St.3d __, 2016-Ohio-3529, ¶ 55.  " 'It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and render judgment which can be carried into effect.' " *Cincinnati Gas & Elec. Co. v. Pub. Utilities Comm.*, 103 Ohio St.3d 398, 2004-Ohio-5466, ¶ 17, quoting *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970).  Consequently, when an appellate court discovers that an event has occurred that renders moot one of the questions in the case before it, that court must dismiss the part of the case that has become moot.  *Hagerman v. Dayton*, 147 Ohio St. 313 (1947), paragraph one of the syllabus.

{¶ 14} As a general matter, contempt occurs when a party disobeys a court order. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001).  Courts classify contempt rulings as either civil or criminal in nature. *Id.*  In cases of civil contempt, a court imposes a sanction with the purpose to coerce a party in violation of a court order to comply with the order for the benefit of the complaining party. *Liming v. Damos*, 133 Ohio St.3d 509, 2012-Ohio-4783, ¶ 12.  Thus, civil contempt is characterized by a conditional sanction, i.e., the contemnor faces imprisonment unless he purges himself of the contempt by complying with the court order. *Id.*; *accord Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253 (1980) (holding that, in cases of civil contempt, "[p]rison sentences are conditional.  The contemnor is said to carry the keys of his prison in his own pocket, * * * since he will be freed if he agrees to do as ordered.").

{¶ 15} Given the coercive purpose of a civil contempt order, an appeal of such an order becomes moot once the contemnor complies with the underlying court order, thus

purging himself of the contempt. *Hadinger v. Hadinger*, 10th Dist. No. 15AP-9, 2016-Ohio-821, ¶ 9, 11; *see Huffer v. Huffer*, 10th Dist. No. 09AP-574, 2010-Ohio-1223, ¶ 17 ("Because the purpose of civil contempt is to urge or compel the offending party to make a court-ordered payment, the issues regarding the contempt become moot when the payment is made."); *Williamson v. Cooke*, 10th Dist. No. 05AP-936, 2007-Ohio-493, ¶ 12 (holding that once a party complies with the underlying court order, civil contempt proceedings become moot). In such situations, the contemnor's compliance resolves the controversy created by the contemnor's prior disobedience. This resolution abrogates the need for any judicial review of, and ruling on, the controversy. *See Grundey v. Grundey*, 10th Dist. No. 13AP-224, 2014-Ohio-91, ¶ 20 ("Because an appellate court must decide only actual controversies, 'it may not decide contempt appeals once the contemnor has purged the contempt.' ").

{¶ 16} A court may consider evidence from outside the record to determine whether an issue has become moot. *State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, ¶ 8. Moreover, in deciding whether an issue is moot, an appellate court, acting sua sponte, may take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Mountaineer Invests., LLC v. Performance Home Buyers, LLC*, 2d Dist. No. 24173, 2011-Ohio-3614, ¶ 11; *Ussher v. Ussher*, 2d Dist. No. 2009-CA-49, 2011-Ohio-1440, ¶ 6, fn. 3. Such sources include public records and government documents available from reliable sources on the internet. *State Resources Corp. v. Hendy*, 9th Dist. No. 25423, 2011-Ohio-1900, ¶ 20; *accord Ussher* at ¶ 6, fn. 3 (sua sponte taking judicial notice of facts contained in the property records maintained by the Champaign County Auditor's office).

{¶ 17} Here, the trial court found that Livingston violated the divorce decree by refusing to list the West Lincoln Avenue house for sale. The trial court sentenced Livingston to 30 days in jail, but suspended that sentence on the condition that he list the house for sale and facilitate the sale. Given the conditional nature of the sanction, we determine that the trial court entered a civil contempt order, intended to coerce Livingston into complying with the divorce decree.

{¶ 18} Because the order at issue is a civil contempt order, evidence that Livingston purged his contempt would moot any issue arising from the finding of contempt. Pursuant to the property records maintained online by the Delaware County Auditor, Livingston and Darr sold the West Lincoln Avenue house on November 17, 2016. Delaware County Auditor, Property Information, http://delaware-auditor-ohio.manatron.com/Property.aspx?mpropertynumber=519-432-08-016-000&mtab=property&p=5194320801600 (accessed March 9, 2017). We find the Delaware County Auditor's website a reliable source, and thus, we take judicial notice of the November 2016 sale of the West Lincoln Avenue house. Logically, the sale of the house could not have occurred without Livingston purging his contempt by listing the house for sale and facilitating that sale. We conclude, therefore, that Livingston has complied with the trial court's orders. This compliance resolved the controversy caused by his refusal to put the house on the market and mooted any challenge to trial court's finding of contempt. Accordingly, we dismiss Livingston's first and second assignments of error.

{¶ 19} By his third assignment of error, Livingston argues that the trial court erred in not altering the division of property set forth in the divorce decree. In the divorce decree, the trial court ordered the parties to first apply the proceeds from the sale of the West Lincoln Avenue house to specific debts, and to then spit equally any remaining proceeds. Livingston contends that the trial court should have modified this division to compensate him for the $27,000 he paid toward the principal due on the mortgage after Darr moved out of the house. We disagree.

{¶ 20} After a trial court issues a divorce decree, it lacks jurisdiction to modify the marital property division absent express written consent or agreement to the modification by both spouses. R.C. 3105.171(I); *Cameron v. Cameron*, 10th Dist. No. 12AP-349, 2012-Ohio-6258, ¶ 10. Thus, generally, a trial court has control over the division of property at the time of the divorce decree, but not thereafter. *Id.*

{¶ 21} Here, Darr did not consent to the trial court exercising continuing jurisdiction over the property division nor did she agree to the specific modification Livingston sought. The trial court, therefore, lacked jurisdiction to modify the divorce

decree to grant Livingston a greater percentage of the proceeds from the sale of the West Lincoln Avenue house. Accordingly, we overrule Livingston's third assignment of error.

{¶ 22} By Livingston's fourth assignment of error, he argues that the trial court abused its discretion in awarding Darr a portion of her post-decree attorney fees and costs pursuant to R.C. 3105.73(B). We disagree.

{¶ 23} R.C. 3105.73(B) provides:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

A trial court exercises its discretion in deciding whether an award of reasonable attorney fees and costs is equitable. *Cryder v. Cryder*, 10th Dist. No. 07AP-546, 2008-Ohio-26, ¶ 34. Thus, an appellate court will not reverse such an award absent an abuse of discretion. *Id.*

{¶ 24} Here, the trial court concluded that an award to Darr of $6,500 in attorney fees and costs was fair and equitable. In arriving at this conclusion, the trial court essentially considered three factors. First, the trial court looked that the "great" disparity between Darr's and Livingston's annual incomes. (Mar. 30, 2016 Jgmt. Entry at 6.) Darr earns approximately $35,000 annually, while Livingston's yearly income exceeds $110,000. Second, the trial court examined the cost that Darr had incurred to litigate post-decree issues and Darr's inability to absorb that cost. As of July 31, 2015, Darr had incurred post-decree attorney fees and litigation costs totaling approximately $17,000. She constantly struggled to secure funds to pay her attorneys, and she had to obtain a loan from a family member to retain her current counsel. At the time of the hearing, Darr owed money to two different law firms, but she did not have the funds to pay either bill. Third, the trial court considered Livingston's conduct. The trial court found:

> [Livingston] has delayed the sale of the marital residence by his own actions. He admits that he is unwilling to list the property until it suits his purposes. * * * The Court finds this behavior has *substantially* frustrated the litigation of this

> matter. Therefore, the Court finds that [Livingston's] unilateral financial decisions as well as [Livingston's] refusal to proceed with the sale of [the] marital residence as ordered is sufficient basis to penalize him with an award of attorney's fees to [Darr]. Moreover, these behaviors by [Livingston] have caused [Darr] to expend considerable sums to pursue her claims.

(Emphasis sic.) (Mar. 30, 2016 Jgmt. Entry at 6.)

{¶ 25} On appeal, Livingston does not take issue with the trial court's consideration of the first two factors. With regard to the third factor, he criticizes the trial court for punishing him "for not capitulating to [Darr's] demands that he repair the marital home at his sole cost and pay her one half of all the accrued net proceeds." (Appellant's Brief at 26.) The evidence does not support Livingston's characterization of the situation. According to Livingston's own testimony, he refused to list the house for sale because Darr would not respond to his ultimatum regarding the disposition of the house. The divorce decree awarded Livingston and Darr equal shares of the sale proceeds after the payment of specified debts. However, under the ultimatum Livingston gave Darr, she would receive either no sales proceeds (if Livingston simply removed her name from the mortgage) or, at best, minimal sales proceeds (if she contributed to the cost of improving the house prior to sale). Livingston benefitted from Darr's refusal to accept less than the divorce decree entitled her because he lived in the house and preferred to wait to list the house anyway. Livingston's actions left Darr with no option other than to file a contempt motion and incur the cost of pursuing that motion. Given these circumstances, we see no abuse of discretion in the trial court's findings regarding Livingston's conduct, or the trial court's decision to penalize Livingston for that conduct.

{¶ 26} Livingston also argues that the trial court abused its discretion in awarding Darr the attorney fees she incurred to commence post-decree litigation over the amount of child support owed to her and the parenting time distribution. Essentially, Livingston contends that the party who initiates post-decree litigation must bear the costs of that litigation. We cannot accept that premise. While a trial court may consider whether the party seeking attorney fees commenced the post-decree litigation, that consideration remains only one factor in the determination of whether an award of attorney fees and

costs is equitable.  Here, other factors, particularly the disparity in the parties' incomes and Livingston's conduct, weighed heavily with the trial court.

{¶ 27} Also, it does not appear that the trial court awarded Darr any attorney fees and costs arising from the post-decree litigation related to child support and parenting time.  The trial court awarded Darr only $6,500 of the approximately $17,000 she owed in post-decree attorney fees and costs.  Based on the itemized bill from her current attorneys and her current attorneys' billable rates, we conclude that the trial court awarded Darr $6,500 in order to fully compensate her for *all* the costs associated with her contempt motion.  The trial court apparently included in its award amounts already billed, as well as the unbilled costs arising from her attorney's preparation for and attendance at the hearing and post-hearing expenses.[1]  Given the disparity in the parties' income, the amount of other post-decree litigation fees Darr incurred, and Livingston's conduct, we find no abuse of discretion in the trial court's attorney fees decision.  Accordingly, we overrule Livingston's fourth assignment of error.

{¶ 28} For the foregoing reasons, we conclude that events subsequent to the March 30, 2016 judgment rendered Livingston's first and second assignments of error moot, and we dismiss those assignments of error.  We overrule Livingston's third and fourth assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

TYACK, P.J., and HORTON, J., concur.

---

[1] We include in the post-hearing expenses the cost of drafting and filing the closing argument and objecting to and responding to Livingston's objections to the magistrate's decision.  We do not include any expenses related to this appeal.