[Cite as *Watson v. Watson*, 2023-Ohio-3719.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Adam T. Watson, | : | |
| Plaintiff-Appellee, | : | No. 22AP-729 |
| | | (C.P.C. No. 16DR-3264) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jesse L. Watson (nka Lee), | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 12, 2023

**On brief:** *Dougherty, Hanneman & Piccin, LLC*, and *Douglas B. Dougherty*, for appellee. **Argued:** *Douglas B. Dougherty*.

**On brief:** *Grossman Law Offices*, *Tracy A. Younkin*, and *John H. Cousins, IV*, for appellant. **Argued:** *Tracy A. Younkin*.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations

DORRIAN, J.

{¶ 1} Defendant-appellant, Jesse L. Watson, now known as Jesse L. Lee ("Lee"), appeals from the November 4, 2022 judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, ruling on objections filed by Lee and plaintiff-appellee, Adam T. Watson ("Watson"), to a magistrate's decision resolving motions filed by the parties. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Watson and Lee were married on August 23, 2003 and had three children together. On August 24, 2016, Watson filed a complaint for divorce; Lee filed an answer

and counterclaim for divorce on October 14, 2016.  On March 12, 2018, Lee and Watson filed an agreed shared parenting plan.  The following day, the trial court issued an agreed judgment entry granting a decree of divorce and a judgment entry adopting the agreed shared parenting plan.

## A. Relevant details of the shared parenting plan

{¶ 3}   The shared parenting plan designated both Lee and Watson as the residential parent and legal custodian of the children, and designated Lee as the residential parent for school placement purposes.  It contained a detailed parenting time schedule, including specific provisions for the two older children and the youngest child, who was 19 months old when the plan was adopted, as well as detailed provisions regarding parenting time on holidays and birthdays, and for vacations and other special days.

{¶ 4}   As relevant to this appeal, the shared parenting plan provided that Lee and Watson would discuss major decisions and share information regarding the children, including the children's medical care and activities.  The children were to continue to be treated by their existing pediatrician and the parties were to mutually select any additional healthcare providers.  Lee was given responsibility for scheduling routine appointments and informing Watson of those appointments. The plan also provided the parties would mutually select the children's extracurricular activities and that Lee would enroll the children in such activities.  In the event of a disagreement about a major decision involving the children, including decisions regarding medical care and extracurricular activities, the plan provided the parties would work together to resolve the dispute; if they were unable to resolve the dispute the plan required them to "follow the recommendation of the respective professional involved in the decision, i.e., the children's pediatrician, the children's teachers, etc." (Shared Parenting Plan at 6.)

{¶ 5}   Watson was ordered to pay child support of $1,314 per month until August 31, 2019, and then to pay $1,291 per month beginning September 1, 2019.  The plan further provided that Watson would pay 55 percent of the children's extracurricular activity expenses and Lee would pay 45 percent of those expenses.

## B. Post-decree motions filed by the parties

{¶ 6}   On December 17, 2018, Watson moved to reallocate parental rights and responsibilities, seeking modifications to the shared parenting plan. On February 8, 2019,

Lee also moved to modify the shared parenting plan. On October 31, 2019, Lee moved to modify child support and moved for an award of attorney fees and expenses. On January 2, 2020, Watson voluntarily dismissed his December 17, 2018 motion to reallocate parental rights and responsibilities; the same day Watson again moved to reallocate parental rights and responsibilities, seeking modifications to the shared parenting plan. On January 3, 2020, Lee voluntarily dismissed her February 8, 2019 motion to modify the shared parenting plan. Then, on January 13, 2020, Lee again moved to modify the shared parenting plan. On May 5, 2020, Watson moved for contempt, asserting Lee violated the shared parenting plan with respect to parenting time on the weekend of May 1, 2020.

{¶ 7}   The trial court appointed Eimear Bahnson as guardian ad litem ("GAL") for the children; Bahnson had previously served as GAL during the divorce proceedings. The GAL issued a report recommending certain modifications to the shared parenting plan. The trial court also appointed Dr. Farshid Afsarifard to conduct psychological examinations of Lee and Watson for purposes of custody evaluation. Dr. Afsarifard issued a report recommending that shared parenting continue on a modified schedule.

## C. Hearing on post-decree motions

{¶ 8}   On August 4 through 6, 2021, a magistrate of the trial court conducted a hearing on Lee's October 31, 2019 motions to modify child support and for attorney fees and litigation expenses, Watson's January 2, 2020 motion to modify parental rights and responsibilities, Lee's January 13, 2020 motion to modify the shared parenting plan, and Watson's May 5, 2020 motion for contempt. The magistrate heard testimony from Lee, Watson, and Watson's new wife.[1] The magistrate also heard testimony from the GAL, Dr. Afsarifard, Lee's former counselor, Lee's current psychologist, and a counselor who previously worked with the children. Following the hearing, the parties submitted written closing arguments.

## D. Magistrate's decision

{¶ 9}   Following the hearing, the magistrate issued a decision addressing the five motions. The magistrate noted that neither party requested findings of fact and conclusions of law. With regard to Watson's motion to modify parental rights and responsibilities and

---

[1] There was a substantial amount of testimony and evidence at the hearing that was not directly related to the assignments of error Lee asserts in this appeal. For purposes of resolving the appeal, we will confine our focus to the evidence relevant to Lee's arguments.

Lee's motion to modify the shared parenting plan, the magistrate considered the relevant factors set forth in R.C. 3109.04(F)(1) and (2) for determining the best interest of the children. The magistrate granted in part both of the motions and modified certain provisions of the shared parenting plan. The magistrate adopted the GAL's recommendations related to decision-making regarding the children's healthcare needs, schooling, extracurricular activities, and work-related daycare. The magistrate also adopted the GAL's proposed parenting-time schedule for the school year.

{¶ 10} The magistrate granted in part Lee's motion to modify child support and increased the child support award. Using Watson's 2020 income and Lee's 2021 monthly income, the magistrate calculated Watson's child support obligation as of March 30, 2021 to be $1,749.52 per month.[2] The magistrate noted that despite their combined income exceeding the maximum annual income listed on the basic child support schedule, the parties did not adjust the original child support calculation based on excess income. The magistrate further noted that neither party argued for such an adjustment. Therefore, the magistrate found the child support amount calculated based on the guideline worksheet was in the best interests of the children and the parties. The magistrate further found it was not in the children's best interest to modify the allocation of child-related expenses from the 55-45 percent ratio contained in the shared parenting plan.

{¶ 11} The magistrate denied Watson's motion for contempt, finding he failed to prove his contempt claim by clear and convincing evidence. The magistrate also denied Lee's motion for attorney fees and litigation expenses, concluding neither party acted in bad faith and that certain changes to the shared parenting plan were necessary.

E. **Objections to the magistrate's decision and trial court's decision on objections**

{¶ 12} Both Lee and Watson filed objections to the magistrate's decision. The trial court conducted a hearing on the objections on October 17, 2022. Following the hearing, on November 4, 2022, the trial court issued a decision fully granting some of the objections, granting in part other objections, and denying the remaining objections. As relevant to this appeal, the trial court denied Lee's objection that the magistrate erred in determining how

---

[2] Although the magistrate indicated the child support calculation was based on the guideline worksheet, no worksheet was attached to the magistrate's decision.

decisions related to the children's medical care would be made. The trial court concluded the magistrate did not err by adopting the GAL's recommendation on this matter, which placed final medical decision-making authority with Watson. The trial court granted in part and denied in part Lee's objection that the magistrate erred in determining how the children were enrolled in extracurricular activities and how extracurricular expenses were allocated. The trial court concluded the magistrate erred by adopting the GAL's recommendation as to extracurricular activity decision-making to the extent that the recommendation required the parties to return to the court for a decision in the event of an unresolvable disagreement. The court adopted a modified version of the GAL's recommendation, which provided that in the event of a disagreement about extracurricular activities, each parent could enroll each child in one extracurricular activity, and that any additional activities must be by agreement of both parents. If the parents could not agree as to additional activities, the child could not be enrolled in them. The trial court concluded the magistrate did not err by denying Lee's request for a modification of the existing 55-45 percent ratio for extracurricular expenses.

{¶ 13} The trial court granted Lee's objection that the magistrate erred in calculating the child support amount. Noting that the magistrate did not file a child support worksheet with the decision, the trial court conducted its own calculation using the child support worksheet and determined Watson's child support obligation as of January 1, 2022 to be $2,795.12 per month. Although the trial court recalculated the child support obligation, it found the magistrate did not err by not extrapolating the child support award based on the parties' total income exceeding the maximum annual income listed on the basic child support schedule. The trial court denied Lee's objection that the magistrate erred by not granting her request for attorney fees, concluding the magistrate considered the proper factors in denying Lee's request for attorney fees and litigation expenses.

## II. Assignments of Error

{¶ 14} Lee appeals and assigns the following four assignments of error for our review:

> [I.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence to modify the existing agreed shared parenting plan with regard to medical decision-making authority for the parties' minor children.

[II.] The trial court erred, abused its discretion, and ruled against the manifest weight of the evidence and not in the best interest of the children in determining how the children are enrolled in extracurricular activities and the allocation of extracurricular expenses between the parties.

[III.] The trial court erred and abused its discretion and ruled against the manifest weight of the evidence in determining plaintiff-appellee's income and not extrapolating for purposes of child support.

[IV.] The trial court erred and abused its discretion by failing to award attorney fees and litigation expenses.

## III. Analysis

### A. Standard of review

{¶ 15} When ruling on objections to a magistrate's decision, a trial court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). " 'The standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies with the nature of the issues that were (1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error.' " *McCarthy v. Johnson*, 10th Dist. No. 18AP-961, 2020-Ohio-3429, ¶ 10, quoting *In re Guardianship of Schwarzbach*, 10th Dist. No. 16AP-670, 2017-Ohio-7299, ¶ 14. Generally, we review a trial court's adoption, rejection, or modification of a magistrate's decision for abuse of discretion. *Id.*, citing *Lenoir v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-94, 2020-Ohio-387, ¶ 10. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In the exercise of discretion, however, no court has the authority to commit an error of law. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 38-39; *State v. Spirnak*, 10th Dist. No. 19AP-261, 2020-Ohio-6838, ¶ 16.

### B. Whether the trial court erred by modifying the shared parenting plan regarding medical decision-making and extracurricular activities

{¶ 16} In her first assignment of error, Lee argues the trial court erred by modifying the shared parenting plan with respect to final decision-making authority regarding the children's medical care. Similarly, in her second assignment of error, Lee argues the trial

court erred by modifying the shared parenting plan with respect to how the children would be enrolled in extracurricular activities and by not modifying the shared parenting plan with respect to the allocation of extracurricular expenses. Because both of these assignments of error relate to modifications to the shared parenting plan, we will address them together.

{¶ 17} R.C. 3109.04(E)(2)(b) provides that a court may modify a shared parenting plan on its own motion or by request of one or both parents "if the court determines that the modifications are in the best interest of the children." *See also Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, ¶ 11 ("[R.C. 3109.04](E)(2)(b) authorizes the trial court—on its own initiative or at the request of one or both parents—to modify the terms of a shared-parenting plan when modification is found to be in the best interest of the child."). R.C. 3109.04(F) sets forth a non-exclusive list of factors the court must consider in determining the best interest of a child. On appeal, we review a trial court's decision on modification of a shared parenting plan for abuse of discretion. *Ramsey v. Ramsey*, 10th Dist. No. 13AP-840, 2014-Ohio-1921, ¶ 43.

{¶ 18} The parties presented evidence at the hearing regarding the children's medical conditions, some of which developed or were diagnosed during and after the divorce proceedings, and the parties' management of those conditions. During the parties' marriage and after the shared parenting plan was in place, Lee took the children to most of their medical appointments and to all dental and orthodontic appointments.[3] Watson admitted he had not attended any medical appointments related to the oldest child's condition but asserted he had attended several appointments with the middle child.

{¶ 19} The parties disagreed about aspects of the children's mental health care, particularly whether the children needed to continue in counseling after the divorce decree and the appropriate counselor or therapist. Lee testified the children's pediatrician recommended they be assessed and possibly treated by the practice's in-house psychologist. The children's former counselor advised against changing the children to a different therapist because the transition could have been difficult for them. Lee believed that under the shared parenting plan the parties were required to follow the

---

[3] The shared parenting plan expressly provided that Lee was responsible for scheduling all of the children's well-child appointments, including annual or periodic check-ups.

recommendation of the children's pediatrician in the event of an unresolvable dispute regarding medical treatment, including a mental health issue. Watson disagreed with that interpretation, asserting the children's pediatrician was not the relevant professional to be making determinations about counseling for the children. Watson was concerned that Lee sought an unnecessary change to the children's counselor and that it would be detrimental to the children.

{¶ 20} Watson claimed Lee sometimes manipulated the scheduling of the children's medical appointments to prevent them from occurring during his parenting time, specifically testifying about a time that one of the children's medical appointments was scheduled during his parenting time and Lee rescheduled the appointment so it would be during her parenting time. Watson asserted he felt he could not trust Lee's decision-making with regard to the children's medical care. Lee testified she tried to accurately convey the information she received from the children's medical providers and introduced a sample of the messages she had sent to Watson regarding the children's medical appointments. Lee believed Watson did not regularly review her messages about the children's medical care. Lee claimed that other than the disagreement about counseling she did not recall Watson objecting to her decisions related to the children's medical care. Lee contended she should be the final decision-maker regarding the children's medical care based on her history of managing the children's medical care if the court chose to modify the shared parenting plan.

{¶ 21} The GAL testified that when speaking to the children's medical providers there was an "underlying theme" that Lee "had no issue undermining [Watson] in front of the children at [medical] appointments." (Aug. 6, 2021 Tr. at 581.) The GAL further testified that she tended to receive different information from the medical providers than she heard from Lee. The GAL was concerned that Lee misinterpreted recommendations from professionals, although she believed Lee did not do so intentionally. Because the children had "health issues that need to be communicated properly," the GAL recommended Watson be given final medical decision-making authority in the event of an unresolvable dispute. (Aug. 6, 2021 Tr. at 581.)

{¶ 22} With respect to extracurricular activities, there was evidence that each of the children was involved in multiple activities, including team sports. Both Lee and Watson testified about Lee's frequent travel with the children to St. Albans, West Virginia, where

her family lived, and how that travel affected the children and their extracurricular activities.[4]  In one instance, Lee enrolled the children in swimming lessons in West Virginia and some of the lessons would have occurred during Watson's parenting time.  When discussing options for transporting the children to the lessons, Lee did not initially advise Watson that the lessons would occur in West Virginia.  There was no specific evidence at the hearing related to the cost burden of the children's extracurricular activities but, as discussed more fully below, there was evidence that both Lee and Watson had full-time employment, and each earned six-figure incomes.  The GAL recommended modifying the shared parenting plan provisions related to the children's extracurricular activities.

{¶ 23}  The magistrate's decision adopted the GAL's recommendations regarding the children's medical care, including that in the event of a dispute, each parent would have the option to obtain a second opinion, and that if after obtaining a second opinion no decision could be reached, Watson would have the final decision-making authority.  The magistrate's decision also adopted the GAL's recommendations regarding extracurricular activities, including that neither parent could enroll a child in an activity without consent of the other parent and that if the parents could not reach an agreement, either parent could submit the issue to the court for a final decision. The magistrate's decision did not modify the existing provision for paying the costs of the children's extracurricular activities, which provided that Watson was responsible for 55 percent of the costs and Lee was responsible for 45 percent of the costs.

{¶ 24} The trial court denied Lee's objection to the magistrate's adoption of the GAL's recommendation regarding the children's medical care, which gave Watson final decision-making authority regarding the children's medical care.  The trial court granted in part and denied in part Lee's objection to the magistrate's adoption of the GAL's recommendation regarding the children's extracurricular activities. The trial court modified the magistrate's decision to provide that if the parties could not reach an agreement, each parent could enroll a child in one extracurricular activity and any other activities would have to be by mutual agreement or the child could not be enrolled.  The trial court retained the 55-45 percent division of extracurricular activity expenses.

---

[4] Shortly after the divorce decree, Lee purchased a single-family home in West Virginia and raised the possibility of moving to West Virginia. Lee asserted she abandoned that idea because Watson opposed it, but Watson was concerned that Lee still intended to move the children to West Virginia.

**{¶ 25}** On appeal, Lee argues the evidence presented at the hearing established the existing provisions in the shared parenting plan related to medical decision-making were in the children's best interest. Lee claims Watson had a history of non-involvement with the children's medical care and that she was primarily involved in the children's medical care. Lee asserts Watson failed to demonstrate he had been actively involved in the children's medical care or that she failed to appropriately manage their care. Lee claims Watson only sought changes to the shared parenting plan as retaliation for her reporting certain concerns to children services. Similarly, Lee argues the changes to the shared parenting plan related to extracurricular activities are not in the children's best interest because Watson is not committed to ensuring the children's participation in such activities. Lee further argues she successfully managed the children's activities under the existing provisions of the shared parenting plan. Lee also asserts the 55-45 percent allocation of extracurricular activity expenses was not in the children's best interest because of the disparity between the parties' incomes.

**{¶ 26}** Lee's arguments on appeal are largely a reiteration of her arguments from the hearing, asserting the evidence supports her claims and that Watson failed to support his claims. However, as explained above, we review the trial court's decision on the parties' objections to the magistrate's decision under an abuse of discretion standard. "When applying an abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court." *Byers v. Robinson*, 10th Dist. No. 08AP-204, 2008-Ohio-4833, ¶ 61. " 'An abuse of discretion will not be found when the reviewing court simply could maintain a different opinion were it deciding the issue *de novo*.' " *Id.*, quoting *Peterson v. Crockett Constr., Inc.*, 7th Dist. No. 99-CO-2 (Dec. 7, 1999). In this case, the magistrate considered the evidence presented at the hearing and addressed the appropriate factors when determining the children's best interests. Although Lee clearly disagrees with the magistrate's conclusions and the trial court's adoption of those conclusions, she has failed to demonstrate the trial court acted unreasonably, arbitrarily, or unconscionably in adopting the magistrate's decision and modifying the shared parenting plan.

**{¶ 27}** Accordingly, we overrule Lee's first and second assignments of error.

### C. Whether the trial court erred by determining Watson's income or by not extrapolating the child support obligation due to the parties' high income

{¶ 28} In her third assignment of error, Lee proffers two arguments. First, she asserts the trial court erred in determining Watson's income for purposes of calculating child support. Second, she claims the trial court erred by not extrapolating the child support obligation because the parties' combined income exceeded the maximum amount under the basic child support schedule.

{¶ 29} Lee sought a modification of Watson's child support obligation. Generally, we review child support issues for abuse of discretion.[5] *Boone v. Holmes*, 10th Dist. No. 14AP-449, 2015-Ohio-2242, ¶ 6. Accordingly, "[u]nless [a] trial court's modification of its original support award was unreasonable, arbitrary or unconscionable, we will not overturn its determination on appeal." *Id. See Bates v. Bates*, 10th Dist. No. 04AP-137, 2005-Ohio-3374, ¶ 20 ("A trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion.").

{¶ 30} Watson testified he was employed as a veterinary radiologist at MedVet and was paid on a production basis, rather than a salary or an hourly wage. Watson introduced evidence of his income from his employment with MedVet and from a side business, indicating he had total income of $481,036.00 in 2018, $484,700.00 in 2019, and $574,077.00 in 2020. Lee introduced a copy of Watson's paystub from June 30, 2021, establishing Watson earned $343,874.00 from MedVet for the first half of that year. When asked whether he expected to receive similar income in the second half of the year, Watson testified it was hard to determine because his income was based on production and his caseload fluctuated. Lee began working full-time as a medical data review manager in March 2021, earning a fixed salary of $10,208.34 per month.

{¶ 31} The magistrate's decision noted that if Watson matched his year-to-date income for the remainder of 2021, he would have a salary of $687,749.86 for the year. Based on Watson's testimony that he was paid based on production, however, the

---

[5] We note that notwithstanding the trial court's discretion in child support matters, this court has held that " 'the court must literally and technically follow the statutory requirements in all material respects' " when determining child support. *Habtemariam v. Worku*, 10th Dist. No. 19AP-47, 2020-Ohio-3044, ¶ 18, quoting *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 88, citing *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraph two of the syllabus.

magistrate concluded it would be too speculative to extrapolate Watson's 2021 salary based on the year-to-date amounts on his June paycheck. Instead, the magistrate found it appropriate to rely on Watson's 2020 income from all sources. Although the trial court granted Lee's objection to the magistrate's child support calculation and ordered Watson to pay an increased amount, the trial court also relied on Watson's 2020 income in making its child support calculation. On appeal, Lee argues the magistrate and the trial court acted arbitrarily by relying on Watson's 2020 income rather than projecting his year-to-date 2021 income for a full year.

{¶ 32} For purposes of calculating child support, a fully employed parent's income is defined as gross income. R.C. 3119.01(C)(10). In this context, gross income is "the total of all earned and unearned income from all sources during a calendar year," including income from salaries, wages, bonuses, and other sources. R.C. 3119.01(C)(13). Under R.C. 3119.05(H), when appropriate, the court may average income "over a reasonable period of years."

{¶ 33} The trial court noted that Watson's 2020 income was "substantially similar" to the three-year average from 2018 through 2020. (Nov. 4, 2022 Jgmt. Entry on Objs. at 8.) This suggests the trial court considered averaging Watson's income under R.C. 3119.05(H), but ultimately elected to calculate child support based on his 2020 income, which was the greatest full-year amount during that period. As explained above, Watson testified that his income from MedVet was production based and varied based on how many x-rays or MRIs he read. Watson expressly testified he did not know if his income in the second half of 2021 would be consistent with his income from the first half of that year. Under these circumstances, the trial court did not err by using Watson's 2020 income in its child support calculation.

{¶ 34} Lee further argues the trial court erred by not extrapolating the child support obligation beyond the maximum amount contained in the basic child support schedule. Under R.C. 3119.021(A), the Ohio Department of Job and Family Services must create a basic child support schedule to be used in calculating child support unless the parents' combined annual income is less than a specified minimum guideline income or greater than a specified maximum guideline income. At the time of the trial court's decision, the maximum guideline income was $336,467.04. *See* R.C. 3119.021(B)(1)(c). When the

parents' combined annual income exceeds the maximum guideline income contained in the basic child support schedule, the court must determine the child support obligation on a case-by-case basis, considering the needs and the standard of living of the children and the parents. R.C. 3119.04. In such cases, the court must compute a basic combined child support obligation that is no less than it would have been for the maximum guideline income on the basic child support schedule, unless it "determines that it would be unjust or inappropriate and therefore not in the best interest of the child, obligor, or obligee to order that amount." R.C. 3119.04.

{¶ 35} In this case, the trial court determined the parties had a combined adjusted annual gross income of $691,559.08. Because this exceeded the maximum guideline income amount under the basic child support schedule, the trial court was required to compute a child support obligation no less than the maximum amount contained in the basic child support schedule. In completing its child support worksheet, the trial court used the combined child support obligation equal to the maximum amount under the basic child support schedule for a family with three children (i.e., $40,760.00). Lee argues the trial court erred by not extrapolating the child support obligation beyond the maximum amount contained in the basic child support schedule.

{¶ 36} This court recently explained the application of R.C. 3119.04 in cases where the parents' combined annual income exceeds the maximum annual income listed in the basic child support schedule:

> The law * * * steers a trial court in setting child support levels for a child of higher income parents to make a calculation of the basic worksheet amount. That basic amount sets a preliminary floor for the support obligation, which may be adjusted downward only on a written determination, supported by findings, that such an amount would be "unjust or inappropriate and would not be in the best interest of the child, obligor, or oblige[e]." The preliminary floor is not a preliminary cap, however, and the court is to set the support level "on a case-by-case basis and shall consider the needs and the standard of living" of the child and the parents.

*Moore v. Moore*, 10th Dist. No. 21AP-276, 2022-Ohio-1862, ¶ 76, quoting former R.C. 3119.04(B). In *Moore*, the trial court completed the child support worksheet using the combined adjusted annual gross income of the parties to that case (which was more than

$6.8 million) and concluded it was required to order the father to pay the amount of child support calculated under the worksheet (which was more than $37,000 per month). *Id.* at ¶ 78-79. On appeal, this court concluded the trial court erred because it misunderstood the guideline amount under the statute and failed to consider the needs and standard of living of the child and the parents. *Id.* at ¶ 80.

{¶ 37} Unlike *Moore*, where the trial court effectively concluded it was required to extrapolate the child support obligation based on the parties' excess income, Lee asserts the trial court erred in the present case because it did not extrapolate despite the parties exceeding the maximum annual income amount.

{¶ 38} The *Moore* decision warned against rote extrapolation in high-income cases, citing an Eighth District Court of Appeals decision authored by then-Judge (now-Justice) Stewart. *Moore* at ¶ 89. Rather than mechanically applying the percentages from the child support schedule to the parents' excess income, the trial court must engage in a case-by-case determination based on the needs and standard of living of the children and parents. *Id.*

{¶ 39} The parties presented very little evidence at the hearing regarding the children's financial needs and standard of living, and the magistrate noted that Lee "made no real mention of her motion for child support until her closing." (Mag.'s Decision at 12.) The magistrate further noted the parties did not adjust the child support amount upward in the shared parenting plan based on excess income and concluded that applying the maximum guideline amount when calculating child support was in the best interest of the children and the parties. The trial court found the magistrate did not err by not extrapolating the child support obligation, thereby effectively adopting the magistrate's conclusion that it was not necessary to extrapolate to meet the needs and standard of living of the children and the parties.

{¶ 40} On appeal, Lee claims there is a great disparity of income between herself and Watson. However, other than broadly asserting the children would experience a different lifestyle in her home as compared to Watson's home due to that disparity, Lee cites nothing to establish that the trial court failed to consider the needs and standard of living of the children or the parties when making its child support award. Moreover, in her own child support worksheet, attached to her post-hearing brief, Lee did not extrapolate the child

support obligation based on excess income. Lee's child support worksheet used the same combined total child support obligation that the trial court used in its worksheet (i.e., $40,760.00) and requested the trial court order Watson to pay $2,104.16 in child support. The trial court's modified child support award of $2,795.12 per month was more than double the amount the parties originally agreed to under the shared parenting plan and was greater than the amount Lee requested in her post-hearing brief. Under these circumstances, we cannot conclude the trial court abused its discretion in determining the child support award.

{¶ 41} Accordingly, we overrule Lee's third assignment of error.

## D. Whether the trial court erred by denying Lee's motion for attorney fees and litigation expenses

{¶ 42} In her fourth assignment of error, Lee asserts the trial court erred by denying her motion for attorney fees and litigation expenses.

{¶ 43} Lee sought attorney fees and litigation expenses under R.C. 3105.73(B), which provides that in any post-decree motion or proceeding arising out of a divorce action, "the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." When determining whether an award of attorney fees and expenses is equitable, the court may consider the parties' income, conduct, and any other relevant factors it deems appropriate, but may not consider the parties' assets. R.C. 3105.73(B). An award of attorney fees under R.C. 3105.73(B) lies within the sound discretion of the trial court. *Roush v. Roush*, 10th Dist. No. 19AP-246, 2019-Ohio-4777, ¶ 15; *Roubanes v. Roubanes*, 10th Dist. No. 14AP-183, 2014-Ohio-5163, ¶ 6. Therefore, we will not overturn a trial court's decision on a motion for attorney fees under R.C. 3105.73(B) absent an abuse of discretion.

{¶ 44} At the hearing, Lee testified the proceedings had been a financial hardship on her. She introduced evidence that she had incurred $122,692.78 in legal fees and expenses, and testified she believed those fees and expenses to be reasonable and appropriate. Watson stipulated that Lee's attorney charged a reasonable rate and that the attorney fees were reasonable and necessary. Watson also introduced evidence of his own attorney fees and expenses, amounting to $81,101.98.

{¶ 45} The magistrate found that some of the allegations made by the parties were supported by the evidence while others were not and concluded that neither party acted in bad faith in pursuing their claims. The magistrate further found that changes to the shared parenting plan had been necessary to make it workable for the family. Based on a review of the record and consideration of the relative incomes of the parties after exchange of support, the magistrate concluded it was not appropriate to award attorney fees to either party. In denying Lee's objection to this part of the magistrate's decision, the trial court noted the magistrate applied the proper analysis by considering the factors under R.C. 3105.73(B) and neither party requested findings of fact and conclusions of law that would have provided more detail on the magistrate's reasoning.

{¶ 46} On appeal, Lee contests the magistrate's conclusion that neither party acted in bad faith, alleging Watson sought to modify the shared parenting plan only nine months after the divorce decree was entered. She claims Watson made unsupported allegations against her during litigation. Lee also cites Watson's income advantage and claims he used his greater financial resources to extend the litigation.

{¶ 47} Disparity in income is one factor the trial court may consider when determining a motion for attorney fees under R.C. 3105.73(B), and this court has affirmed attorney fee awards where the trial court found income disparity between the parties. *See*, *e.g.*, *Darr v. Livingston*, 10th Dist. No. 16AP-315, 2017-Ohio-841, ¶ 27; *Epitropoulos v. Epitropoulos*, 10th Dist. No. 10AP-877, 2011-Ohio-3701, ¶ 44. Other factors, however, such as the conduct of the parties, also may contribute to a trial court's finding that it is equitable to award attorney fees. *See Darr* at ¶ 26-27 (noting that both the disparity of income and the appellant's conduct weighed heavily in the trial court's analysis of whether an award of attorney fees was equitable); *Epitropoulos* at ¶ 45 (noting that trial court considered the appellant's conduct in discovery that increased appellee's litigation expenses). Moreover, a showing of income disparity alone is not necessarily dispositive, as demonstrated by this court's decision in *Williams v. Williams*, 10th Dist. No. 15AP-739, 2016-Ohio-3344. In that case, this court affirmed an order compelling the mother to pay some of the father's attorney fees despite his income being twice as much as hers, because the magistrate found that both the mother and her attorney engaged in conduct that was detrimental to progress in the case and discouraged settlement. *Williams* at ¶ 22-26.

{¶ 48} In this case, the magistrate's decision indicates she considered the relevant factors under the statute in denying Lee's motion for attorney fees. As the trial court noted, neither party requested findings of fact and conclusions of law that would have provided more detail as to the magistrate's reasoning. Lee argues that Watson moved to modify the shared parenting plan less than one year after it was implemented, but the record establishes that both parties were actively engaged in post-decree litigation and both parties filed various motions seeking relief from the trial court. Under these circumstances, we cannot find the trial court abused its discretion by denying Lee's objection to the magistrate's denial of her motion for attorney fees. Accordingly, we overrule Lee's fourth assignment of error.

## IV. Conclusion

{¶ 49} For the foregoing reasons, we overrule Lee's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

BOGGS and EDELSTEIN, JJ., concur.

_____