[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Martin v. Tuscarawas Cty. Job & Family Servs.*, Slip Opinion No. 2020-Ohio-3507.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3507

THE STATE EX REL. MARTIN *v.* TUSCARAWAS COUNTY JOB AND FAMILY SERVICES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Martin v. Tuscarawas Cty. Job & Family Servs.*, Slip Opinion No. 2020-Ohio-3507.]**

*Mandamus—R.C. 5153.17 imposes no duty on county children-services agency to allow relators to inspect or copy agency's records of their childhood history, and agency director's good-cause determination did not create such duty—Relators failed to establish clear legal right to inspect or copy the records—Writ denied.*

(No. 2019-1377—Submitted April 28, 2020—Decided July 1, 2020.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this original action, relators, Morgan Martin and Kenzie Aparijo, seek a writ of mandamus compelling respondent, Tuscarawas County Job and

Family Services ("TCJFS"), to produce copies of, or permit relators to inspect, records pertaining to their childhood history with TCJFS. We previously denied TCJFS's motion to dismiss and granted an alternative writ. Upon consideration of the parties' evidence and arguments, we now deny the writ.

## The evidence in the record

{¶ 2} Relators are sisters who spent portions of their childhoods in the Tuscarawas County foster-care system. They believe that they experienced trauma while in foster care and that access to their TCJFS records will help them gain closure and move forward with their lives.

{¶ 3} Martin claims that in May 2018, she requested to inspect all TCJFS records pertaining to her childhood and that a TCJFS representative advised her that although she could obtain a summary of her case file with no identifying information, access to her entire file would require the approval of TCJFS's director, David Haverfield. But according to Beth Kiggans, a TCJFS employee, after Martin requested her children-services history, Kiggans advised Martin that she could release only nonidentifying information from Martin's file, that access to any additional information would require Haverfield's written approval, and that Kiggans would check with Haverfield to see what additional information the agency could release to Martin. Kiggans claims that she thereafter reviewed Martin's file and prepared a report containing only nonidentifying information summarizing Martin's involvement with TCJFS. After obtaining approval from Haverfield, Kiggans sent the report to Martin.

{¶ 4} On June 20, 2018, Martin received a copy of the summary report and a document signed by Haverfield stating that Martin had sought "information of her history prior to her adoption" and that Haverfield had found " 'good cause' for the request as it is in her best interest." The document also stated that Haverfield had determined that it was "appropriate to release a summary" of her history with TCJFS "per her request."

{¶ 5} Martin did not find the summary report useful. About a week after she received it, she went to TCJFS's office and requested to inspect all records pertaining to her. Martin claims that although she physically saw her case file, agency representatives told her that the file was too large and would take too much time to redact and copy.

{¶ 6} Kiggans acknowledges that she met with Martin at TCJFS's office and that during their meeting, Martin's case file was on Kiggans's desk. Kiggans expressly denies stating that Martin could not receive additional information from her file because it was too large and would take too much time to redact and copy. According to Kiggans, she provided Martin with pictures and other general information from the file and informed Martin that if she e-mailed specific questions to Kiggans, Kiggans would seek permission to release any additional information. In addition, Haverfield averred that TCJFS did not consider the size of Martin's file or redaction requirements in deciding what information to release to her.

{¶ 7} In May 2019, relators' attorney sent counsel for TCJFS a letter requesting that the agency either provide relators with copies of their case files or allow them to inspect the files and make their own copies. Relators' attorney indicated that TCJFS had initially told Martin that although she could obtain a summary of her file with nonidentifying information, access to her entire file would require Haverfield's approval based on a showing of good cause. And because Haverfield later found "good cause" in approving Martin's request, relators' attorney argued, TCJFS was required to give relators access to their files. Relators' attorney also provided TCJFS with three releases, in which relators and a third sister had agreed to release to one another any information TCJFS had regarding them. The releases, relators' attorney stated, would eliminate any need for TCJFS to redact information in relators' files.

{¶ 8} In a June 2019 letter, Haverfield denied relators' request. He explained that although records of child-abuse-and-neglect investigations are confidential, Ohio law allowed him, as director of the local children-services agency, to permit release of such records for good cause. He noted that TCJFS staff had spent a considerable amount of time reviewing relators' case files so that he could determine what information to include in the summary report provided to Martin. Haverfield explained that he had to consider certain factors before releasing TCJFS records, including "the fact that these records contain information from other persons (including the biological parents) that may not be appropriate for release." Haverfield further noted that if relators wished to obtain additional information contained in TCJFS records, TCJFS would attempt to assist them, but he was "not willing to simply open the entirety of the file for [relators'] review."

### Procedural history

{¶ 9} In October 2019, relators commenced this original action for a writ of mandamus to compel TCJFS to produce copies of, or permit relators' access to, TCJFS records pertaining to them. TCJFS moved to dismiss. In January 2020, we denied the motion, granted an alternative writ, and set a schedule for the presentation of evidence and the filing of briefs. 157 Ohio St.3d 1542, 2020-Ohio-94, 137 N.E.3d 1221. The parties thereafter submitted evidence, and the case has been fully briefed.

### Relevant statutory framework

{¶ 10} Relators seek access to TCJFS records pursuant to R.C. 5153.17, which provides:

> The public children services agency shall prepare and keep written records of investigations of families, children, and foster homes, and of the care, training, and treatment afforded children, and shall prepare and keep such other records as are required by the

department of job and family services. Such records shall be confidential, but, except as provided by division (B) of section 3107.17 of the Revised Code, shall be open to inspection by the agency, the director of job and family services, and the director of the county department of job and family services, and by other persons upon the written permission of the executive director.[1]

Thus, R.C. 5153.17 requires a children-services agency to keep foster-care records confidential, although the statute allows the agency to inspect records internally and allows "other persons" to inspect records with the written permission of the agency's director.

{¶ 11} We have twice interpreted R.C. 5153.17 in cases factually similar to this one. In *State ex rel. Renfro v. Cuyahoga Cty. Dept. of Human Servs.*, 54 Ohio St.3d 25, 560 N.E.2d 230 (1990), former foster parents sought a writ of mandamus to compel a county agency to make available an investigation report that the agency had prepared due to suspicions of child abuse in the former foster parents' home. We noted that although "the confidentiality promised by R.C. 5153.17 is not absolute," "keeping foster care records confidential * * * is [the agency's] primary responsibility under the statute." *Id.* at 29. Because the former foster parents had failed to cite any authority that would justify overriding the agency's duty to maintain confidentiality, we denied the writ. *Id.* at 29-30.

{¶ 12} In *State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, 40 N.E.3d 1132, a mother sought a writ of mandamus to compel a county children-services agency to allow her access to her minor

---

1. The parties agree that the records relators seek are excepted from the definition of "public records" in R.C. 149.43(A). *See also State ex rel. Edinger v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 8th Dist. Cuyahoga No. 86341, 2005-Ohio-5453, ¶ 6-7 (foster-care records are not public records pursuant to R.C. 149.43(A)(1)(v) and R.C. 5153.17).

daughter's case file. In deciding *Clough*, we implicitly adopted a "good cause" standard—previously relied on by courts of appeals and in Ohio Attorney General opinions—for determining when the director of a children-services agency may allow inspection of confidential records under R.C. 5153.17. *Id.* at ¶ 1, 24-26, citing *Johnson v. Johnson*, 134 Ohio App.3d 579, 583, 731 N.E.2d 1144 (3d Dist.1999), *Swartzentruber v. Orrville Grace Brethren Church*, 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 9 (9th Dist.), and *Conrad v. Richland Cty. Children Servs.*, 5th Dist. Richland No. 2011 CA 124, 2012-Ohio-3871, ¶ 16-19; *see also* 1991 Ohio Atty.Gen.Ops. No. 91-003; 2007 Ohio Atty.Gen.Ops. No. 2007-025.

{¶ 13} Specifically, we recognized that "while it is the primary duty of the executive director of a county children services agency to keep its records confidential, the executive director may allow inspection when the requester shows 'good cause.' " *Clough* at ¶ 24. " 'Good cause' is established when the requester shows that disclosure is in the best interests of the child or that the due process rights of the requester are implicated." *Id.* For example, a "parent's right to a fair trial might override the confidentiality requirement," or good cause may be shown when "the requester has a right arising under another statute to inspect the records in question." *Id.* at ¶ 25. The good cause shown "must outweigh the considerations underlying the confidentiality requirement." *Id.* We stressed, however, that exceptions to the confidentiality requirement are "narrow." *Id.*

{¶ 14} Based on that standard, we denied the mother's requested writ because she had not demonstrated good cause to access her daughter's case file. That is, she had not alleged that her child was in any specific danger, that her due-process rights were in jeopardy, or that there was any other compelling reason to depart from R.C. 5153.17's requirement of confidentiality. *Id.* at ¶ 26.

**Summary of the parties' arguments**

{¶ 15} In two overlapping propositions of law, relators assert that Haverfield's initial "good cause" finding created a clear legal duty on TCJFS to provide relators with copies of its records pertaining to them or to permit them to inspect those records and a corresponding clear legal right for relators to have access to those records. According to relators, "[o]nce good cause is established, permission to inspect the records must be given." And TCJFS cannot refuse access to records, relators assert, based on the burden of redacting or copying them.

{¶ 16} In addition, relators assert that Ohio Adm.Code 5101:2-33-21 imposes a mandatory duty on TCJFS to release the requested records. That rule requires a children-services agency to "promptly disseminate all information it determines to be relevant to an individual or agency" when it is in the best interest of "a child subject of the report" of child abuse, neglect, or dependency. Ohio Adm.Code 5101:2-33-21(H)(1). According to relators, because Haverfield already determined that it is in Martin's best interest to have access to her case file, the administrative rule requires TCJFS to promptly disseminate to relators all records pertaining to them.

{¶ 17} In response, TCJFS argues that pursuant to R.C. 5153.17, the director of a children-services agency has discretion to find good cause to release all or a portion of the agency's records pertaining to a child. And a finding of good cause to release certain information, TCJFS asserts, "does not permit unfettered access" to all children-services records. As an example, TCJFS states that a child's file might include a parent's psychological evaluation, which the agency must keep confidential unless the parent signs a release. Here, TCJFS argues that Haverfield found good cause to release to Martin a summary of the information in her file— not all records pertaining to her. And absent a waiver from every person named in Martin's file, TCJFS claims that it has a duty to keep the records confidential.

**Analysis**

**{¶ 18}** To be entitled to a writ of mandamus, relators must establish (1) a clear legal right to the requested relief, (2) a corresponding clear legal duty on the part of TCJFS to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. For the following reasons, relators have not established a clear legal right to inspect or copy the requested TCJFS records.

**{¶ 19}** First, contrary to relators' contention, Haverfield's good-cause finding did not "create" a legal duty requiring TCJFS to give relators full access to all TCJFS records pertaining to them. "Relators in mandamus cases must prove their entitlement to the writ by clear and convincing evidence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus. Here, the evidence supports TCJFS's position that Haverfield found good cause to release a summary of the information in Martin's case file— not to give relators the right to inspect or copy all records in their files.

**{¶ 20}** Specifically, in his initial June 2018 approval document, Haverfield stated that he had found "good cause" for Martin's request and had determined that it was "appropriate to release a summary of [Martin's] children services history to her per her request." In his June 2019 response to relators' attorney, Haverfield stated that TCJFS had already provided Martin with a summary of the information in her case file and that he was "not willing to simply open the entirety of the file for [relators'] review." And in his affidavit filed in this proceeding, Haverfield averred that after receiving Martin's request, he reviewed the agency's records, considered various factors to determine whether she should have access to her file, and determined that the summary report provided to her was appropriate.

**{¶ 21}** Even if—as Martin claims—TCJFS had initially advised her that Haverfield's approval was required only for the release of records in addition to the summary report, Haverfield later clarified the process and his reasoning. And he is

the best source to determine the scope and meaning of his own good-cause finding. R.C. 5153.17 gives the agency director discretion to determine who may inspect the agency's confidential records, and Haverfield's good-cause finding here was limited to the released summary report. Nothing in R.C. 5153.17 suggests that if an agency director finds "good cause" to release *some information* to a requester, then the requester has a legal right to copy and inspect *all agency records* pertaining to that person.

{¶ 22} Indeed, the words "good cause" do not appear in R.C. 5153.17. By claiming they have a legal right to TCJFS records, relators invoke the court-created exception to the statute's confidentiality requirement, which as explained above, permits the agency director to allow inspection of records for good cause shown. Relators ask us to extend the exception by finding that an agency director has a duty to release an entire case file if the director finds "good cause" to release some information contained in the file. But "[a] court in a mandamus proceeding cannot create a duty where none exists." *Clough*, 144 Ohio St.3d 83, 2015-Ohio-3425, 40 N.E.3d 1132, at ¶ 15, citing *State ex rel. Governor v. Taft*, 71 Ohio St.3d 1, 3, 640 N.E.2d 1136 (1994).

{¶ 23} Second, Ohio Adm.Code 5101:2-33-21(H) does not impose a duty on TCJFS to disseminate any records to relators. That regulation requires a children-services agency, upon written approval from its director, to disseminate relevant information when it is believed to be in the best interest of a child who is the subject of a report of child abuse, neglect, or dependency. The rule does not mention *records*—let alone require the agency to allow others to copy or inspect records. Moreover, Haverfield approved the release of only the information contained in the summary report.

{¶ 24} Third, relators failed to submit sufficient evidence supporting their argument that there is good cause to override R.C. 5153.17's confidentiality requirement. " 'Good cause' is established when the requester shows that

disclosure is in the best interests of the child or that the due process rights of the requester are implicated." *Clough* at ¶ 24. Relators are no longer children, they have not alleged a due-process violation, and they have not asserted a right to release of the records under any other recognized exception to R.C. 5153.17's confidentiality requirement or under any other statute. Instead, relators allege that access to their entire case files would further their efforts to "gain closure and move forward" with their lives, but they have failed to submit any evidence from a qualified healthcare professional to support that allegation.

{¶ 25} In *Clough*, we expressed sympathy for the mother's concern about the county agency's investigation into her daughter's possible abuse. However, because the mother had not alleged that her child was in any specific danger, that her due-process rights were in jeopardy, or that there was any other similarly compelling reason to depart from the statutory requirement of confidentiality, we concluded that the mother had not established good cause to access the agency's records. 144 Ohio St.3d 83, 2015-Ohio-3425, 40 N.E.3d 1132, at ¶ 26.

{¶ 26} The same logic applies here. "The exceptions to the confidentiality provision in R.C. 5153.17 are narrow," *id.* at ¶ 25, and without more, relators' unsubstantiated allegation that access to all TCJFS records pertaining to them will improve their emotional well-being is not sufficient to override the statute's confidentiality requirement—let alone sufficient to show that TCJFS had a clear legal duty to give relators access to all records pertaining to them. *See also State ex rel. Edinger v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 8th Dist. Cuyahoga No. 86341, 2005-Ohio-5453, ¶ 7 (dismissing siblings' mandamus complaint seeking copies of their foster-care records because they had "failed to establish that they possess a legal right to inspect" the records).

### Conclusion

{¶ 27} R.C. 5153.17 imposes no duty on TCJFS to allow relators to inspect or copy the records they seek. Nor did Haverfield's good-cause determination

create any such duty or right. We therefore deny relators' request for a writ of mandamus.

Writ denied.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

FRENCH, J., concurs in judgment only.

_____

Taft, Stettinius & Hollister, L.L.P., and Timothy G. Pepper, for relators.

Lisa Vitale Arnold, Tuscarawas County Job & Family Services, for respondent.

_____