[Cite as *A.A. v. Ohio Univ.*, 2024-Ohio-313.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [A. A.], | : | |
| Plaintiff-Appellant, | : | No. 23AP-73 |
| | | (Ct. of Cl. No. 2019-00473JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio University, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 30, 2024

**On brief:** *Michael L. Fradin*, for appellant. **Argued:** *Michael L. Fradin.*

**On brief:** *Dave Yost*, Attorney General, *Timothy M. Miller*, *Lindsey M. Grant*, and *Heather M. Lammardo*, for appellee. **Argued:** *Timothy M. Miller.*

APPEAL from the Court of Claims of Ohio

JAMISON, J.

{¶ 1} Plaintiff-appellant, A. A., appeals from a judgment of the Court of Claims of Ohio, in favor of defendant-appellee, Ohio University ("OU"). For the following reasons, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} In 2000, Robert A. Parsons was hired by OU as a campus police officer. In 2001, Parsons was accused of improper contact with a minor girl. The incident was reported to Athens County Children Services ("ACCS") who investigated the allegations.

{¶ 3} In 2005, appellant was a 15-year-old girl when she became sexually involved with Parsons. According to appellant, the pair had more than 100 sexual encounters. Appellant alleged that on most of these occasions Parsons would get her intoxicated and

then rape her. According to appellant, Parsons would often meet her for sex while wearing his OU police uniform and operating his OU police cruiser. Appellant claimed that at least one of the encounters with Parsons occurred on OU campus. Appellant alleged that Parsons threatened harm to her and her family members if she refused him, disclosed the sexual abuse, or otherwise cooperated with the subsequent investigations by Child Protective Services ("CPS") and OU.

{¶ 4} The illicit relationship was eventually reported to ACCS who investigated the allegations. ACCS interviewed Parsons on December 2, 2005. Parsons reportedly admitted having sexual intercourse with appellant, but only on three occasions. Parsons did not inform OU of the allegations or the investigation. However, on December 8, 2005, after learning of the ACCS investigation, OU placed Parsons on administrative leave and commenced an internal investigation. On February 10, 2006, OU discharged Parsons from his employment. An Athens County Grand Jury indicted Parsons on March 3, 2006 and he was convicted of unlawful sexual conduct with a minor in 2007.

{¶ 5} On April 9, 2019, appellant brought suit against Parsons and OU in the Court of Claims of Ohio, alleging a violation under 20 U.S.C. 1681(a) (Title IX claim), assault and battery based on vicarious liability, negligence, negligent supervision and retention, and negligent infliction of emotional distress. Appellant also sought a determination by the Court of Claims that Parsons was not entitled to personal immunity from suit under R.C. 9.86.

{¶ 6} A threshold issue that arose during the discovery process involved appellant's efforts to obtain ACCS records concerning the 2001 investigation into Parsons sexual abuse of a minor. On September 11, 2020, appellant issued subpoenas to ACCS seeking "all materials relative to the investigation(s) involving Robert Andrew Parsons." (Sept. 11, 2020 Subpoena at 1.) On September 28, 2020, ACCS moved the Court of Claims to quash the subpoena, arguing that statutory confidentiality prevented disclosure of the documents and that appellant had not demonstrated good cause. ACCS also pointed out that the subpoena "does not specify any certain records be produced, just 'all records.' " (Sept. 28, 2020 Mot. to Quash Subpoena at 1). ACCS argued alternatively, if the court determined not to quash the subpoena, the court should review the documents in camera, determine the extent with

which the request must be satisfied, and issue findings of fact in support of its determination.

{¶ 7} In appellant's response to the motion to quash, appellant represented to the Court of Claims that on September 24, 2020, counsel deposed Parsons' former supervisor, Christopher Johnson, and that Johnson admitted the only action taken by OU in response to the abuse allegations in 2001 was to require Parsons to immediately notify a supervisor if he were to ever again be investigated for sexually abusing a minor. Appellant also represented to the court she would testify that "Ohio University sent Parsons to her high school to teach career days and that at one [of] these career days, Parsons arranged to meet her for sex." (Pl. A. A.'s Resp. to ACCS's Mot. to Quash Subpoena at 2.) Appellant explained the relevance of the ACCS documents as follows:

> The discovery sought is relevant to Plaintiff's claims that Ohio University Police Department knew that Parsons posed a risk to girls yet sent him to Plaintiff's high school and provided him with the means to intimidate, threaten, coerce, and sexually abuse Plaintiff even after it knew that he was suspected of sexually abusing Plaintiff.

(Pl. A. A.'s Resp. to ACCS's Mot. to Quash Subpoena at 1-2.)

{¶ 8} On October 27, 2020, the Court of Claims issued a decision granting the motion to quash, without conducting an in camera review, upon concluding that appellant failed to demonstrate good cause for disclosure of otherwise confidential documents. The October 27, 2020 decision is the sole basis of this appeal.

{¶ 9} On January 11, 2021, the Court of Claims bifurcated the issue of OU's liability to appellant from the determination of Parson's personal immunity. Following an evidentiary hearing on the issue of Parson's immunity, the court found that Parsons "is not entitled to personal immunity under R.C. 9.86 and that Ohio courts of common pleas have jurisdiction over civil actions brought against him for alleged matters set forth in the complaint." (Apr. 14, 2021 Jgmt. Entry at 2.)

{¶ 10} On July 8, 2022, OU moved the Court of Claims for summary judgment on each of the claims in the complaint. OU's argument for summary judgment as to the claims of negligence, negligent supervision, and negligent retention was that the evidence did not

permit an inference that a sexual assault on appellant by Parsons was reasonably foreseeable or that any OU act or omission proximately caused harm to appellant.

{¶ 11} On August 29, 2022, the Court of Claims denied OU's motion for summary judgment. The court concluded the evidence gave rise to a genuine issue of material fact exists whether a reasonably prudent employer would have anticipated an injury to a minor, such as appellant, was likely to result from OU's decision to retain Parsons following the 2001 incident. In a footnote, the court made the following relevant observations about the 2000-2001 incident:

> There is conflicting evidence whether Athens County Children Services investigated Parsons in 2000 or 2001. (Camechis Deposition, 94.) Ohio University's administrative investigation in 2001 resulted in a conclusion that allegations against Parsons were inconclusive, as well as a reminder to Parsons of the importance of notifying a supervisor when Parsons's actions may bring recognition to the University's Police Department. (Camechis Deposition, 26-27; Johnson Deposition, 67, 111-112, 118, 179.)
>
> Christopher Johnson (formerly a lieutenant with the University's Police Department who conducted an administrative investigation of Parsons in 2005) testified that, based on notes presented to him during a deposition, that it was reasonable to conclude that a 2001 investigation involved the same or exact allegations in 2005 or 2006 involving [A. A.]. (Johnson Deposition, 111-112.) See Camechis Deposition at 62-63 (acknowledging allegations in 2001 were similar to allegations in 2005).

(Aug. 29, 2022 Decision at fn. 7.)[1]

{¶ 12} The case then proceeded to a bench trial on the issue of OU's liability to appellant on the claims of negligence, negligent hiring and supervision, and intentional infliction of emotional distress. On December 28, 2022, the Court of Claims issued a decision in favor of OU. The court concluded OU owed no duty to appellant to protect appellant from Parsons and did not breach any duty of care owed to appellant either by failing to supervise Parsons or by retaining Parsons on the OU police force after learning of the incidents in 2001. The court also found against appellant on her claim of negligent

---

[1] Tony Camechis was OU's Director of Campus Safety in 2005-2006. He was the Associate Director of Campus Safety in 2001.

infliction of emotional distress.[2]   In ruling for OU on appellant's claim of negligent retention, the court specifically found that appellant "failed to prove the existence of a duty to protect [her] by firing Parsons in 2001." (Dec. 28, 2022 Decision at 5.)[3]

{¶ 13} Appellant timely appealed to this court from the final decision issued on December 28, 2022.

## II.  ASSIGNMENT OF ERROR

{¶ 14} Appellant assigns the following sole assignment of error for our review:

> The Trial court abused its discretion in improperly quashing a subpoena issued by Appellant [A. A.] to Athens County Children's Services (ACCS).  Ultimately, [A. A.] was prejudiced at trial when necessary evidence was unavailable. This evidence would have been available had the subpoena stood.

## III.  STANDARD OF REVIEW

{¶ 15} "Appellate courts generally review discovery rulings, including rulings on motions to quash a subpoena, under an abuse of discretion standard." *Bickel v. Cochran*, 10th Dist. No. 14AP-439, 2014-Ohio-5862, ¶ 9, citing *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 151-52 (1991).  However, where a party resists a subpoena claiming that information sought is confidential, the question is one of law that we review under the de novo standard.  *Id.*, citing *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13.

{¶ 16} Here, the Court of Claims refused to review the documents in question prior to making its ruling.  Consequently, our review of the court order will be abuse of discretion standard.  " 'An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable.' " *South v. Cleveland State Univ.*, 10th Dist. No. 22AP-778, 2023-Ohio-4328, ¶ 9, quoting *Watson v. Watson*, 10th Dist. No. 22AP-729, 2023-Ohio-3719, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

---

[2] The Court of Claims found that appellant had abandoned the Title IX claim and the claim for assault and battery based on vicarious liability.

[3] We note that the Court of Claims, as the trier of fact, disbelieved appellant's testimony that sexual abuse occurred after the date OU learned of the ACCS investigation and disbelieved appellant's testimony that any of the sexual abuse occurred on OU grounds.

## IV. LEGAL ANALYSIS

{¶ 17} In appellant's sole assignment of error, appellant contends the trial court erred when it granted the motion to quash the subpoena issued to ACCS, without first conducting an in camera inspection to determine whether any of the documents were discoverable. We agree.

{¶ 18} R.C. 2151.421(I) provides that a children services agency's investigatory record resulting from a report of suspected child abuse is confidential. *See State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, ¶ 18. R.C. 2151.421(I)(1) states that "[t]he information provided in a report made pursuant to this section and the name of the person who made the report shall not be released for use, and shall not be used, as evidence in any civil action or proceeding brought *against the person who made the report*." (Emphasis added.) Child abuse investigation reports compiled under that statute are also exempt from the mandatory disclosure provisions of R.C. 149.43(B). *Clough* at ¶ 18. Similarly, under R.C. 5153.17, children services agency investigatory records resulting from a report of suspected child abuse are confidential and exempt from disclosure under the Ohio Public Records Act. *Id.* at ¶ 23.

{¶ 19} In *State ex rel. Martin v. Tuscarawas Cty. Job & Family Servs.*, 161 Ohio St.3d 117, 2020-Ohio-3507, the Supreme Court of Ohio noted that the confidentiality promised by R.C. 5153.17 is not absolute. *Id.* at ¶ 11. The *Martin* court acknowledged the director of a children services agency may allow inspection of confidential records under R.C. 5153.17 if "good cause" is established. *Id.* at ¶ 13. Good cause " 'is established when the requester shows that disclosure is in the best interests of the child *or that the due process rights of the requester are implicated.*' " (Emphasis added.) *Id.* at ¶ 24, quoting *Clough* at ¶ 24.

{¶ 20} The Court of Claims, in granting the motion to quash, made the following determination:

> Upon review, the court finds that (1) the subpoena served upon ACCS seeks records that generally are confidential; (2) [A. A.] has not established good cause to allow inspection of confidential records under R.C. 5153.17, notwithstanding [A. A.]'s contention that ACCS's records are relevant to certain claims asserted by [A. A.]; (3) [A. A.] may receive a fair trial without access to ACCS's confidential records, *see In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942

(1955) (fairness requires an absence of actual bias in the trial
of cases).

(Oct. 27, 2020 Entry at 4.)[4]

{¶ 21} Here, appellant's cause of action does not involve a claim either by or against anyone who provided information to the investigators in 2001, other than Parsons. The Court of Claims nevertheless quashed the subpoena without first conducting an in camera inspection. Thus, the court decided the issue without considering the offer by ACCS to submit the documents to the court for inspection.

{¶ 22} Appellant argued in the Court of Claims that a timely and thorough investigation of the facts underlying the 2001 allegations was not performed by OU when it should have been. Appellant maintains that a thorough and timely investigation of the 2001 incident would have uncovered facts establishing OU's knowledge of Parsons propensity to sexually abuse minors. Because the opportunity to timely investigate the 2001 incident passed long before this action was commenced, the information in the ACCS documents is of particular importance to appellant.[5] In our view, appellant demonstrated to the court that her right to pursue her claim against OU would be significantly impaired if she were not granted access to the otherwise confidential information. Because appellant established good cause existed to compel an in camera review of the ACCS documents, the court acted unreasonably in concluding otherwise.

{¶ 23} In *Grantz v. Discovery for Youth*, 12th Dist. No. CA2004-09-216, 2005-Ohio-680, a minor who was adjudicated a delinquent child and placed in an independent living facility raped plaintiff who was a reading tutor at the facility. Plaintiff filed suit alleging that the county agencies and court had knowledge of the minor's prior history of violent sexual behavior and negligently placed the minor in the facility without warning plaintiff of the danger he posed. The agencies and court denied the victim's request for the minor's juvenile records based on relevancy and confidentiality. The trial court compelled the discovery.

---

[4] The original Court of Claims judge granted the motion to quash. In a subsequent exchange, plaintiff pointed out that subsequent judge may have had a different opinion on quashing the subpoena, but no one took any further action.

[5] In denying summary judgment, the trial court determined that the question whether appellant's claims were timely filed was an issue for trial. The trial court did not explicitly address the issue in the liability decision.

{¶ 24} The Twelfth District Court of Appeals held that the trial court did not abuse its discretion or breach relevant statutory confidentiality considerations because the minor and his parent executed waivers pursuant to R.C. 1347.08, permitting access to the records, and good cause was demonstrated in that the records concerning the minor's criminal history were relevant to prove the issues of notice and foreseeability. The court of appeals explained that "[t]he proper procedure for determining the discoverability of confidential juvenile records requires the trial court to conduct an in camera inspection to determine: 1) whether the records are necessary and relevant to the pending action; 2) whether good cause has been shown by the person seeking disclosure; and 3) whether their admission outweighs the confidentiality considerations set forth in R.C. 5153 and R.C. 2151." *Grantz* at ¶ 19.

{¶ 25} The Court of Claims in this case could have ordered ACCS to submit documents related to the investigation of the 2001 incident for in camera review with identifying information redacted, as the identity of the minor victim was not relevant to appellant's case. Other identifying information could be further redacted by the court from any documents the court deemed discoverable following the in camera review. The significance of the documents to appellant's case is the conduct alleged and the proof provided, not the identity of the victim or the names of individuals providing information to investigators. Under the circumstances of this case, the court was obligated to review the documents and to determine whether appellant's need for the documents and the relevance of the documents to her claims outweighed any confidentiality concerns.

{¶ 26} In support of the Court of Claims ruling, OU argues there was no need for ACCS to submit the documents to the court for inspection because the alleged relevance of the documents is purely speculative given the undisputed fact that no criminal proceedings were ever commenced against Parsons and no restraining orders were issued following the 2001 incident. OU essentially argues that the ACCS documents likely contain no proof that OU had actual or constructive knowledge of any facts that would have required them to discharge Parsons in 2001 because Parsons was never charged with an offense and OU's investigation revealed no conclusive evidence of sexual abuse.

{¶ 27} Appellant counters that the information OU gathered in its investigation of the incident came from Parsons himself. OU never interviewed the minor victim and never

sought information from CPS.  Appellant points to the obvious credibility issue with Parson's account of the 2001 incident given his failure to inform OU of the CPS investigation even though he had an obligation to do so.  Appellant maintains the information in the ACCS documents should have been reviewed by the Court of Claims because that information is probative of critical elements of her negligent retention and supervision claim.  We agree.

{¶ 28} In *Chapa v. Genpak, L.L.C.*, 10th Dist. No. 12AP-466, 2014-Ohio-897, this court set out the elements of a claim for negligent supervision or retention as follows: "(1) the existence of an employment relationship; (2) *the employee's incompetence*; (3) *the employer's actual or constructive knowledge of such incompetence*; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries."  (Emphasis added.) *Id.* at ¶ 106, citing *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 729 (10th Dist.1999), citing *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 739 (10th Dist.1996).

{¶ 29} In our view, facts revealed by the ACCS documents are probative of the threshold questions of Parsons' incompetence in 2001 and OU's constructive knowledge of Parsons' incompetence.  In other words, the information in the ACCS records may aid the trier of fact in answering those threshold questions, one way or the other. At the liability trial, an exchange between the Court of Claims judge and appellant's trial counsel reveals the potential significance of the ACCS documents to the liability determination:

> [COUNSEL]: Your Honor, what we have here is a case of a failure to act.
>
> THE COURT: Okay. What was OU supposed to do and when were they supposed to do it?
>
> [COUNSEL]: Okay. In 2001 they should have done something more substantive than they did.
>
> THE COURT: And what should they have done?
>
> [COUNSEL]: Yes. Well, in -- then in 2001 they should have done a more substantive investigation than any of the witnesses were able to tell us about today. None of the witnesses, including the person who subsequently did the final investigation, nor the chief of police, both in 2001 and 2005, were able to testify to a single --

THE COURT: *Let's go back to 2001. What would they have found out if they gave a bigger investigation?*

[COUNSEL]: *They could have at least talked to the young lady in question.*

THE COURT: *What would they have found out?*

[COUNSEL]: *We don't know because they didn't talk to them.*

THE COURT: *Okay. So if they were supposed to talk about it, you don't have any information that tells me they should have -- they would have found out X and this is what they should have done as Y.*

[COUNSEL]: We would have found out that Mr. Parsons had a young lady riding around in his car --

THE COURT: Who has testified to that?

[COUNSEL]: Mr. Parsons. He had a young lady riding around in his car who he allegedly made a pass at. And he testified that he didn't really make a pass at her, he reached over toward the other door. And he was unwilling to testify as to what he meant by "pass."

THE COURT: *Okay. And then based upon -- okay. The information I have here today, that's all I have here today, is that based upon his statement, because there is no other statement from any victim or any other -- his statement is somebody thought I may have made a pass.*

 (Emphasis added.) (Nov. 21, 2022 Tr. at 194-96.)

{¶ 30} It is clear from the above cited exchange and from the subsequent liability decision, the absence of critical details about the 2001 incident was the primary reason appellant failed to convince the Court of Claims, as factfinder, that the 2005 sexual assault on appellant was foreseeable to a reasonable employer in OU's position.  Appellant produced some proof that the 2001 investigation of Parsons involved similar conduct and the ACCS documents likely contain the relevant details.

{¶ 31} In *Sitton v. Massage Odyssey, L.L.C.*, 1st Dist. No. C-190578, 2020-Ohio-4282, a masseur employed by a massage parlor falsely claimed to be properly licensed on

his resume and, after being hired, he sexually assaulted a client. The client sued the massage parlor for assault and battery and negligent hiring, supervision, or retention theory. The trial court granted summary judgment for the massage parlor on the claim of negligent hiring, retention, and supervision.

{¶ 32} In affirming the trial court, the First District Court of Appeals made the following observation about the negligent hiring, supervision, and retention claim:

> [E]ven if, as Ms. Sitton claims, an investigation into Mr. Miller's license would have revealed some incompetence or dishonesty, this would not have sounded the alarm about the prospect for a later sexual assault. Under the circumstances presented here, because *Ms. Sitton failed to point to any prior instances of similar misconduct by Mr. Miller which may give rise to foreseeability of his criminal conduct, no liability arises under a negligent hiring, supervision, or retention theory.*

(Emphasis added.) *Id.* at ¶ 14.

{¶ 33} Here, appellant has clearly identified a prior instance of similar misconduct by Parsons. By quashing the subpoena without first conducting an in camera inspection, the Court of Claims essentially foreclosed appellant from discovering facts which may support a finding that a sexual assault on appellant was a foreseeable result of OU's decision to retain Parsons in 2001. We disagree with OU's claim that because the court ruled on the motion to quash in the context of Parson's immunity, not OU's liability, appellant's failure to reissue the subpoena at the liability stage in the proceedings resulted in a waiver. As previously noted, the court ruled that the documents were protected from disclosure by statutory confidentiality and appellant had failed to show good cause for an in camera inspection, "notwithstanding [her] contention that ACCS's records are relevant to certain claims." (Oct. 27, 2020 Entry at 4.) The court's written decision gave no indication that a different ruling might result if the subpoena were reissued.

{¶ 34} OU next contends any error in quashing the subpoena was harmless because the evidence developed at trial revealed Parsons met and became acquainted with appellant through his daughter, who attended school with appellant, not through an OU related activity as appellant has alleged. This being the case, OU claims the decision to retain Parsons after the 2001 incident could not have been the legal cause of appellant's harm.

{¶ 35} Civ.R. 61 defines harmless error as follows:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. *The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.*

(Emphasis added.)

{¶ 36} OU's argument cannot be resolved in a vacuum. Indeed, it is difficult for the Court of Claims to assess the adverse impact of the quashing of the subpoena without knowing what the ACCS documents reveal. Moreover, appellant has alleged and produced evidence to support a finding that Parsons used his OU credentials to coerce appellant into submitting to his sexual advances. Under the circumstances of this case, we find the court's decision to quash the subpoena without reviewing the documents in question unfairly affected appellant's right to prosecute her claims for negligent retention and supervision.

{¶ 37} In a related argument, OU contends that even if knowledge of the information developed during the CPS investigation in 2001 would have caused a reasonable employer to discharge Parsons from his employment as a police officer, statutory confidentiality precluded OU from inspecting the documents containing that information. As earlier noted, however, appellant has argued and produced evidence to support a finding that a timely and thorough investigation of the facts underlying the 2001 allegations was not performed by OU when it should have been. Because the opportunity to timely investigate the incident had passed well prior to the commencement of this action, the contents of the ACCS documents are the best contemporaneous evidence of the facts surrounding the 2001 incident.

{¶ 38} For the foregoing reasons, we hold that the Court of Claims abused its discretion when it failed to conduct an in camera inspection of the ACCS documents to determine whether the information contained in those documents were discoverable. Accordingly, we sustain appellant's sole assignment of error.

**V. CONCLUSION**

{¶ 39} Having sustained appellant's sole assignment of error, we reverse the October 27, 2020 entry of the Court of Claims of Ohio and remand this matter for that court to vacate the December 28, 2022 decision in favor of OU as to the claims for negligent retention and supervision, and to conduct an in camera inspection to determine the discoverability of confidential records.

*Judgment reversed;*
*cause remanded with instructions.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

_____